**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANTONIO BELK, VICTOR THOMAS, CYNTHIA CHUBB, CARMEN CONSOLINO, and ANDRES GARCIA, | |
| Plaintiffs, | |
| | Case No. 17-cv |
| v. | |
| THOMAS J. DART, in his official capacity as Sheriff of Cook County, Illinois, ZELDA WHITTLER, in her official capacity, and the COUNTY OF COOK, a unit of local government as joint employer, | |
| Defendants. | Plaintiffs Demand Trial by Jury |

## <u>COMPLAINT</u>

Plaintiffs, ANTONIO BELK, VICTOR THOMAS, CYNTHIA CHUBB, CARMEN

CONSOLINO, and ANDRES GARCIA (collectively hereinafter, "Plaintiffs"), by and

through their undersigned attorneys, Cass T. Casper, TALON LAW, LLC, and

Christopher Cooper, Law Offices of Christopher Cooper, complain as follows against

Defendants THOMAS J. DART, Sheriff of Cook County, ZELDA WHITTLER,

Undersheriff of Cook County, and the COUNTY OF COOK (collectively hereinafter

"Defendants").

1

## NATURE OF COMPLAINT

Plaintiffs are five Commanders/Captains within the Cook County Department of Corrections who, collectively, have nearly 115 years' experience working in uniformed, sworn rank positions, have worked in every division and unit of the Department of Corrections, have provided security for 1000's of inmates, have passed every promotional examination and successfully promoted through every available rank, have hundreds of hours of specialized training and experience, have numerous commendations and certificates of recognition, have almost no discipline in their collective careers with the Sheriff's Office, and each is within a stone's throw of a full retirement in honorable good standing. Plaintiff Carmen Consolino is an active, decorated United States Marine with 18 years of military service who has served tours in Iraq, Afghanistan, and Eastern Europe, and who was personally awarded the Sheriff's Award of Valor in 2010.

Despite the Plaintiffs' astonishing records of merit, and that they are among the most accomplished, uniformed officers in the entire Cook County Department of Corrections, effective December 4, 2017, their employer – elected Sheriff Thomas J. Dart and the other Defendants -- laid off the Plaintiffs in what is perhaps the single greatest waste of experienced, trusted manpower in recent Department of Corrections' history, if not County history. And Sheriff Dart's December layoff of the Plaintiffs follows the beginning of the Commanders' successful petitioning of the Illinois Labor Relations

2

Board to form a union in August 2017, and their vocalizing of concerns during

command meetings about safety and security concerns impacting officers and detainees

alike.

***

This is an action brought pursuant to 42 U.S.C. § 1983 for First Amendment

Speech and Association claims, as well as Fourteenth Amendment Due Process and

Equal Protection claims stemming from the layoff of certain Correctional Commanders /

Captains within the Cook County Department of Corrections. Plaintiffs are former

employees of the Defendants formally occupying the title of Commander, and who

were laid off effective December 4, 2017. As employees, Plaintiffs were responsible for,

*inter alia*, ensuring the safety and security of staff and inmates within the various

divisions of the Cook County Department of Corrections within the Defendant Sheriff's

Office. The "Commander" job title is a title change from "Correctional Captain" that

occurred in approximately May 2011, with the actual job duties and functions of

Commander being nearly identical to those of Correctional Captain. Correctional

Captain is a merit rank under the rank classifications of the Rules and Regulations of

the Cook County Sheriff's Merit Board ("Merit Board"). The Merit Board's rank

classifications do not list "Commander" as a merit rank, but the Plaintiffs are factually

and functionally identical to "Correctional Captains" with only the name of their rank

having been changed to "Commander," probably in contravention of the Merit Board's law and rules.

As a basis for their Complaint on First Amendment Speech and Association grounds, Plaintiffs allege they were retaliated against because they each engaged in protected speech and associational activities by speaking out about adverse workplace conditions, staffing shortages, and lack of proper safety equipment and training during pre-accountability and accountability meetings occurring on a semi-monthly basis for many months preceding the layoffs. Such is protected speech on matters of public concern, as recognized by Judge Bucklo. *See See Villaci v. Herrell*, Memorandum Opinion and Order, No. 14 C 3907, p. 17 (Judge Bucklo, December 18, 2014). The Sheriff himself, as well as upper-level command staff, attended many of these meetings.

As a second basis for their speech and association claims, Plaintiffs allege that the Defendants targeted them for layoff because Plaintiffs had filed a petition to unionize with the Illinois Labor Relations Board ("Board"), and participated in, and gave evidence in, a hearing at such Board in support of their unionizing drive. In summary, on December 18, 2013, Teamsters Local 700 filed a majority interest petition with the Board seeking to certify as the exclusive bargaining representative of the Commanders. The Sheriff and the County raised a "supervisor" and "managerial" challenge to the petition, arguing that the commanders were inappropriate for a bargaining unit because they qualified as "supervisors" and "managers" excluded from unionizing under the

state labor law.  After a multi-day trial on that issue, the Administrative Law Judge

ruled that the Plaintiffs were neither "supervisors" nor "managers" within the meaning

of the state law as interpreted, and were permitted to form a union.  He so ruled in a

Recommended Decision and Order ("RDO") dated August 2, 2017 in Board case

number L-RC-14-004.  The case has since been pending before the full Illinois Labor

Relations Board for adoption, rejection, or modification of the RDO, when the instant

layoff of the Plaintiffs occurred on December 4, 2017.

 Plaintiffs allege that the layoff is a clear act of retaliation for their First

Amendment-protected speech and association activity, including reporting safety and

security problems, in joining a union-organizing drive, associating together in

attempting to protect and bargain collectively for their wages and working conditions,

in giving evidence and acting in concern in preparing for the Board hearing, and

attending and testifying in the Board hearing, in the presence of Defendants' attorneys

and higher-ranking officials.  In the case of Plaintiffs Consolino, Belk, and Chubb, each

attended nearly every day of the multi-day Board hearing, and Consolino and Belk

testified extensively – for hours -- in the proceedings, ultimately leading to the

successful RDO.  Plaintiff Thomas was asked by the Defendants to testify in their case

against the union drive, but he did not have favorable testimony and he was dismissed

by the Sheriff's representatives at the Board hearing before he could testify.  Timing and

targeting, at a minimum, show that the layoff is an act of retaliation for the Plaintiffs'

vocalization of safety concerns and participation in the union drive and Board hearing, especially given that the Sheriff lost the RDO-phase of the case as recently as August 2, 2017.

Next, Plaintiffs assert they were denied due process under the Fourteenth Amendment of the United States Constitution. Plaintiffs had a property interest in continued employment as merit rank Commanders and/or Captains and/or Lieutenants pursuant to state law and/or Sheriff's policy, *to wit*, the Cook County Sheriff's Merit Board Act, 55 ILCS 5/3-7001, *et seq.* ("the Act"), and the *Sheriff's Employment Action Manual* ("SEAM"). Plaintiffs also had a clearly implied promise of continued employment in the same titles. Both are so because the Act provides that removal of merit rank employees may only be "for cause." *See* 55 ILCS 5/3-7012. Similarly, SEAM provides for a "probationary period" for employees promoted to Lieutenant and/or Commander for a period of one-year, during which time they are at will in such position. After that, they are, at least by clear implication if not expressly, "for cause" employees with a promise of continued employment. The Plaintiffs have also been given multiple communications over the years creating, at least by clear implication if not expressly, a continued interest in ongoing employment

Further, the Commanders had their title illegally changed from Correctional Captain in about May 2011, but their job duties and functions have remained nearly identical between the title changes. They remain, in fact and substance, merit rank

Correctional Captains. Even further, they never lost their certified "hard rank" of

Lieutenant when they were promoted to Captain (which became Commander), and

should have been allowed to "bump" junior Lieutenants, rather than being wholesale

kicked to the curb by the Sheriff after decades of dedicated service. Instead, Plaintiffs

were unilaterally given notices of layoff in late November 2017, never given a hearing

or opportunity to negotiate their layoff, never allowed to bump junior officers in other

ranks, and just let go. This is a blatant violation of the Fourteenth Amendment's

entitlements to due process before a state deprivation of property. There is no balance

of state and private interests justifying the deprivation here, particularly when

Defendant Dart maintains 100's of Director positions staffed by persons with (in many

cases) mere years of service to the Sheriff's Office, as opposed to the Commanders, who,

collectively, have more than century.

Plaintiff's finally assert that their layoff violates the Equal Protection Clause of

the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. §

1983. This is so because, on information and belief, during the time of the layoffs

certain of Defendant Dart's Directors were offered opportunities to work in lower

positions within the Sheriff's office, rather than being forced to retire or laid off.

Plaintiffs were given no such opportunities, and when Plaintiff Garcia asked if he could

demote he was told there were no vacancies, despite that he would learn days later that

some Directors were given exactly such an opportunity. The Sheriff does not even have

7

a rational basis for offering Directors such opportunities without giving same to the Commanders.

## JURISDICTION & VENUE

1. Jurisdiction of this Court arises under 42 U.S.C. § 1983, 42 U.S.C. § 1988, and 28 U.S.C. § 2201.

2. Venue is proper in this District because Defendants have their principal places of operation in this District, all Plaintiffs and, on belief, all Defendants, reside in this District, and all of the acts giving rise to Plaintiffs' claims have occurred in this District.

## PARTIES

3. Plaintiff Carmen Consolino is a legal adult and a resident of Will County, Illinois. He is currently serving in the United States Marine Corps, where he has honorably served consecutively for the past 10 years, with 18 years total military service. He has served tours in Iraq (2007), Afghanistan (2011), and Eastern Europe (2016). Prior to December 4, 2017, he was employed by Defendant as a correctional officer and commander. His original date of hire was April 13, 1998, and was promoted through the ranks to Correctional Captain in October 2010, having his title changed to Commander in May 2011. Plaintiff Consolino was harmed by Defendants in Cook County, Illinois.

4.  Plaintiff Antonio Belk is a legal adult and a resident of Cook County, Illinois. Prior to December 4, 2017, he was employed by Defendant as a correctional officer and commander. His original date of hire with the Defendant Sheriff is July 1, 1988, and he was promoted through the ranks up to Lieutenant in April 2007, and up to Commander in April 2012. He was assigned to Division 9 at the time of the layoff. Plaintiff Belk was harmed by Defendants in Cook County, Illinois.

5.  Plaintiff Victor Thomas is a legal adult and a resident of Cook County, Illinois. Prior to December 4, 2017, he was employed by Defendant as a correctional officer and commander. His original date of hire is July 1990, after which he was appointed through the ranks to Correctional Captain in May 2008, which title was changed to Commander in about May 2011. Plaintiff Thomas was harmed by Defendants in Cook County, Illinois.

6.  Plaintiff Cynthia Chubb is a legal adult and a resident of Cook County, Illinois. Prior to December 4, 2017, she was employed by Defendant as a correctional officer and commander. Her original date of hire is January 10, 1994, and she was promoted through the ranks to Correctional Captain in June 2007, which title was changed to Correctional Commander in May 2011. Plaintiff Chubb was harmed by Defendants in Cook County, Illinois.

7. Plaintiff Andres Garcia is a legal adult and a resident of Porter County, Indiana. Prior to December 4, 2017, he was employed by Defendant as a correctional officer and commander. His original date of hire is February 1994, and he was promoted through the ranks to Lieutenant in April 2002, and to Commander in April 2012. Plaintiff Garcia was harmed by Defendants in Cook County, Illinois.

8. Defendant Thomas J. Dart is a legal adult and a resident of Cook County, Illinois. He is the duly-elected Sheriff of Cook County. Defendant Dart harmed Plaintiffs in Cook County, Illinois. He is a final policymaker and decisionmaker for the Sheriff's Office. Defendant is sued in his official capacity.

9. Defendant Zelda Whittler is the Undersheriff of Cook County. Defendant Dart authorized that the Undersheriff be the person in his office designated to identify potential positions for layoff. Defendant Whittler harmed Plaintiffs in Cook County, Illinois. She is a final policymaker and decisionmaker for the Sheriff's Office. Defendant is sued in her official capacity.

10. Defendant Cook County is a unit of local government and joint employer of the Plaintiffs with the Defendant Sheriff. Defendant harmed Plaintiffs in Cook County, Illinois.

## FACTS COMMON TO ALL COUNTS

11. All prior paragraphs, *supra*, are restated, realleged, and incorporated by reference herein as if fully included here.

12. Plaintiffs all were occupying the title of Commander at the Cook County Department of Corrections when they were given notice that they would be subject to layoff effective December 4, 2017.

13. Plaintiffs occupied the title of Correctional Captain from various times until on or about May 2011 when the title "Commander" replaced the "Correctional Captain" merit rank and subsumed all the duties of such merit rank.

14. Plaintiffs are occupying the merit rank position of Correctional Captain with only the name of the position having been changed to "Commander" in about May 2011, but the position remaining functionally and factually equivalent.

15. Additionally, if Plaintiffs occupy a "non-merit rank" in the Commander position, Plaintiffs nonetheless retain their last merit "hard rank" they occupied prior to promotion to Captain/Commander.

16. Plaintiff Consolino was promoted to Captain in May 2010, with the title changed to Commander in May 2011. Plaintiff Thomas was promoted to Captain in May 2008, with the title changed to Commander in May 2011. Plaintiff Chubb was promoted to Captain in May 2007, with the title changed to Commander in May 2011. Plaintiffs Belk and Garcia were promoted from Lieutenant to Commander in April 2012.

17. All Plaintiffs have been performing generally the same job duties and functions as had been performed by Captains prior to the title change of such position to Commander in May 2011.

18. All Plaintiffs have completed the Captain/Commander probationary period referenced in the Sheriff's Employment Action Manual, stating, in pertinent part that, that newly appointed selected candidate shall be in a probationary status for a period of one (1) year of active duty in that rank from the date of appointment.

19. Throughout the duration of their time as Captains/Commanders, the Plaintiffs have attended, at various times, "pre-accountability" and "accountability" meetings with Sheriff's upper-command staff and, sometimes, the Sheriff himself.  During these meetings each of the Commanders at various times verbally raised matters of public concern for discussion at these meetings, including, but not limited to:

    a.  safety and security of staff and detainees;

    b.  improper and/or inadequate equipment and training of staff;

    c.  inadequate staffing; and,

    d.  low officer morale.

20. While not verbatim, in general, at these meetings Plaintiffs expressed concerns with the adequacy and/or sufficiency of the topics noted *supra* during these

meetings with the point being to address overall safety, morale, and efficiency
concerns relating to running the Department of Corrections, keeping staff and
detainees safe, and efficiently utilizing County resources.

21. Plaintiffs spoke as citizens on such matters because, for example, when they
expressed such concerns they subjected to adverse actions such as being
shunned, belittled, and subsequently disinvited from pre-accountability and
accountability meetings, or relegated to attendance via telephone.

22. Plaintiffs' articulation of concerns relating to corrections / police protection and
public safety involve matters of public concern, and they were laid off, at least in
part if not in whole, in retaliation because of their protected speech and to deter
such speech by Plaintiffs and other officers in the future.

23. In December 2013, Plaintiffs sought to form a union to collectively and in
association bargain for better wages, working conditions, and improve their
respective working lives. They signed union cards and filed a Majority Interest
Petition that same month, and the Defendants challenged such Petition on the
grounds that the Plaintiffs were state law "supervisors" and/or "managers," and
the Board set the matter for hearing.

24. Plaintiffs Consolino, Belk and Chubb attended nearly every one of the Board trial
hearings regarding the supervisor and manager challenge, with Consolino and

Belk both giving hours of testimony over parts of the following days of trial: July
30 and 31, 2014; October 16, 2014; November 17, 2014; and January 13, 2015.

25. Plaintiff Thomas was asked by Defendants Dart and the County to give
testimony favorable to them in the Board case, but he could not give testimony
that was favorable to the Defendants' case at the Board hearing, and he was
dismissed by the Sheriff's representatives at the Board hearing but before he
could give testimony.

26. Plaintiff Garcia attended numerous union drives and on belief the Defendants
were and are aware that he was an open and known supporter of the union
drive.

27. The Plaintiffs' union drive, participation in the hearings, and testimony and
presence at the hearings involved matters of grave public concern, *to wit*, a
struggle over labor policies between the Sheriff / County and the Plaintiffs, as
well as a deep examination of the role of the Captains / Commanders at the
Department of Corrections in relation to the rest of the staff and detainees and as
to the wholesale operations of the Department going beyond merely the
employment context.

28. Some of the testimony given by Plaintiffs at the Board could be construed as
critical of management, which itself raises matters of public concern. For
example, during one of the hearings a commander testified that he was not a

14

supervisor or manager because he was sometimes assigned to trim trees and mow the lawn on part of the DOC compound as part of his responsibilities.

29. On August 2, 2017, the Board issued an RDO finding that the Commanders were not state law supervisors or managers, and could lawfully form a union. The matter has been on review before the full Board, with no final decision as of today's date.

30. However, rather than risk the RDO becoming final and being forced with a bargaining unit of Commanders, Defendant Dart just laid off the Plaintiffs effective December 4, 2017.

31. On information and belief, Dart maintains at least 100 or more Directors, many of whom are short term Sheriff's employees without the decades of career service and long-term, in-the-trenches experience of the instant Plaintiffs. For example, on information and belief, Defendant Dart has maintained a spot for a Director of Acupuncture and a Director of Cable Television, while the Plaintiffs were laid off.

32. On information and belief, some of the Directors and other officers were offered the opportunity to work in lower-ranking positions in lieu of a layoff, although none of the Plaintiffs were given any such opportunity.

33. All Plaintiffs were open, active, and known supporters of the state law-based union drive, whereas none of the Directors or officers offered lower positions have been involved in any similar actions to Plaintiffs' knowledge.

34. None of the Plaintiffs were given any due process whatsoever prior to their layoff, they were given no mechanism to challenge the layoff, and they were given no opportunity to "bump" junior employees in other ranks or to negotiate mitigating effects to the layoff or recall rights.

35. Defendants have given no good reason whatsoever for the targeting of the Plaintiffs for layoff, when all of the other ranks have remained intact, except for instances of Directors and others being offered lower positions in lieu of layoff or forced retirement.

36. While Plaintiffs were given a cursory "Exit Interview," such was only to advise of their pension law rights and COBRA election rights.

37. During Plaintiff Garcia's Exit Interview, he inquired if he could step down to Lieutenant. He was told he could not and that there were no vacancies.

38. Despite what was told to Plaintiff Garcia, Directors were permitted to occupy other ranks and positions, including Lieutenant and Sergeant. None of the Plaintiff's were offered this option.

39. None of the Plaintiffs' termination paperwork contained "*Shakman*" political-affiliation-based disclaimers.

## COUNT I: VIOLATION OF 42 USC § 1983, 1ST AMENDMENT PROTECTED SPEECH VIOLATION AGAINST ALL DEFENDANTS

40. All prior paragraphs, *supra*, are restated, realleged, and incorporated by reference herein as if fully included here.

41. At all times relevant, Defendants acted under color of law.

42. Defendant Dart, personally, directed that Defendant Whittler identify positions for layoff. Defendant Whittler thereafter selected the Plaintiffs for layoff. Both Defendants ultimately approved of the Plaintiffs' layoffs.

43. Defendants all were and are aware of Plaintiffs' vocal concerns about safety and security at pre-accountability and accountability meetings throughout their tenure as Captains/Commanders. Such speech was on matters of public concern, and not ordinarily within the scope of the Commanders' routine job duties.

44. In initial response to their vocalization of safety and security concerns, some of the Plaintiffs were asked to leave pre-accountability and accountability meetings, to participate merely via telephone, or disinvited entirely.

45. Defendants all were and are aware of Plaintiffs' union organizing efforts, participation in filing a Majority Interest Petition at the Board, participating in the Board's hearing procedures, testifying before the Board on multiple days of hearing and over hours of testimony, and deliberating with then-union counsel throughout the Board hearings in the presence of witnesses for the Sheriff.

46. Plaintiffs' union organizing drive, participation in preparation for the Board hearing, attendance at the Board, and Board testimony involved matters of public concern and were not ordinarily within the scope of their job duties.

47. Defendants all were and are aware of the Board's favorable RDO issued by the ALJ at the Board on August 2, 2017.

48. Defendants all were and are aware that the Commander-favorable RDO is pending acceptance, rejection or modification by the full Board.

49. Defendants were and are aware of the Plaintiffs' vocal concerns about safety and security, as well as union organizing efforts, at the time the Defendant Sheriff directed Defendant Undersheriff to identify positions for layoff.

50. Defendants were and are aware of the protected activities included in this Complaint at the time the Defendants jointly, collectively, and personally selected Plaintiffs for layoff effective December 4, 2017.

51. Defendants personally selected Plaintiffs for layoff while acting under the color of law because of, or at least motivated in part by, retaliation for at least the following protected activities:

   a. Vocalizing matters of public concern about officer and detainee safety in ways that highlighted misuse of public funds and breaches of public trust at pre-accountability and accountability meetings throughout the duration of their time as Captains/Commanders;

b. Signing union cards underlying the Majority Interest Petition to form a union; and,

c. Participating in, planning for, and testifying before the Board over hours of hearings and in front of Sheriff's attorneys and witnesses in an effort to form a union.

52. Defendants Dart's and Whittler's motivations in selecting Plaintiffs for layoff, as opposed to other employees, is to retaliate for their vocalization of safety and security concerns, and for participating in all aspects of a union organizing drive, with the end result and intent of Defendants being to chill and deter Plaintiffs and other officers from engaging in similar such speech and association-based conduct in the future.

53. Defendants took the actions set forth above under color of law in retaliation for, and in violation of, Plaintiffs' exercise of their First Amendment rights to speech and association, at least on matters of public concern.

54. Defendants took the actions set forth above with malice against Plaintiffs for having vocalized safety and security concerns, and for their protected union activities.

55. Defendant Dart was personally involved in the deprivation of Plaintiffs' constitutional rights because he authorized Defendant Whittler to select individuals for layoff, and then Defendant Dart acquiesced in the decision to

target the Commanders without intervening and without consideration for the

message such layoff sends to everyone about what happens to officers who

exercise First Amendment associational- and speech-based rights.

56. Defendant Whittler was personally involved in the deprivation of Plaintiffs'

constitutional rights because she accepted Sheriff Dart's cloak of authority to

select individuals for layoff and then with malice and/or deliberate indifference

to the harm to Plaintiffs' exercise of First Amendment rights selected Plaintiffs

for layoff.

57. Defendants were personally involved in the formulation and approval of a policy

to select Plaintiffs for layoff because of and in retaliation for their constitutionally

protected activity.

58. Defendants' actions in this case will deter these Plaintiffs and other officers of the

Sheriff's Office from raising safety and security concerns, and/or from pursuing

protected activities in association and concert, such as filing petitions to unionize

under state law and participating in all aspects of the union organizing drive.

59. Defendants actions have actually and proximately caused Plaintiffs to incur

substantial damages, including lost pay, lost benefits, lost insurance coverage (or

soon to be lost insurance coverage where COBRA is elected), and emotional

distress and anguish.

20

WHEREFORE, Plaintiffs pray that this Court enter and order the following affirmative and other relief:

60. Order and enter judgement against all Defendants to rescind the Plaintiffs' layoff and reinstate them to their prior positions with full back pay, benefits, and other make whole relief with pre-judgment interest;

61. Order and enter judgment against all Defendants to pay damages to Plaintiffs for actual, general, special, compensatory damages, including emotional distress and reputational damage;

62. Order and enter judgment against all Defendants to pay the costs of litigating this action and reasonable attorneys' fees;

63. Order and enter judgment against all Defendants to jointly and severally pay punitive damages;

64. Order and enter judgment against all Defendants to cease and desist from laying off the Plaintiffs in contravention of their federal constitutional rights;

65. Order such other relief as this Court deems just and proper.

**COUNT II: VIOLATION OF 42 USC § 1983, 1ST AMENDMENT PROTECTED ASSOCIATION VIOLATION AGAINST ALL DEFENDANTS**

66. All prior paragraphs, *supra*, are restated, realleged, and incorporated by reference herein as if fully included here.

67. Plaintiffs, jointly and in concert, exercised the First Amendment freedom to associate freely by:

a.  signing union cards sufficient to support a Majority Interest Petition to form a union;

b.  jointly attending meetings with union representatives in preparation for the Board hearing on their Petition;

c.  attending the Board hearing over multiple days of hearing in the presence of Sheriff's attorneys and higher-level officials;

d.  in the case of Belk and Consolino, in testifying together and in association over multiple days for hours at the Board in the presence of Sheriff's attorneys and higher-level officials;

e.  in the case of Chubb, by attending Board hearings and preparation meetings in concert with the other Plaintiffs over multiple days in the presence of Sheriff's attorneys and higher-level officials;

f.  in the case of Thomas, by attending the Board hearing as a potential witness for the Sheriff's case, but not being able to provide useful testimony to the Sheriff;

g.  in the case of Plaintiff Garcia, by attending preparation meetings and openly supporting the unionization efforts with the other Plaintiffs;

h.  by all Plaintiffs in jointly and in concert acting together with the joint cause of obtaining Board-certified union status to improve their working conditions and wages;

     i.   by all Plaintiffs in raising safety and security concerns together at pre-accountability and accountability meetings, even when such resulted in them being excluded from future meetings or relegated to telephone presence; and,

     j.   by obtaining a favorable RDO from the Board on August 2, 2017, with full review by the full Board set for sometime after that, but avoided by the Defendants through targeting of the Plaintiffs through retaliatory layoffs before the Board could consider the matter.

68. In their raising of safety and security concerns, Plaintiffs were not acting according to their usual job duties but as citizens on matters of public concern, *to wit*, on the well-being and safety of officers and detainees. When they expressed such concerns jointly, the Defendants began disinviting them from pre-accountability and accountability meetings or relegating them to the telephone.

69. In their union activity participation, Plaintiffs were not acting in the scope of their usual job duties, and were associating on matters of public concern including the labor relations policies of the Defendants and joint criticism of same of Defendants and management.

70. Defendants were aware of the Plaintiffs safety and security concerns, and union drive and participation, because higher-level executives, to include even the

Sheriff himself were present at workplace meetings as well as throughout the Board hearings regarding the union petition.

71. Defendants personally violated the First Amendment rights of Plaintiffs by causing their layoff in retaliation for their protected First Amendment association-based activities listed herein, and by specially targeting the Plaintiffs for layoff because of such activities.

72. Plaintiffs have suffered severe and ongoing damages as a result of the layoff, including but not limited to lost wages, benefits, lost or to-be-lost insurance coverage, and anxiety and emotional distress and humiliation.

WHEREFORE, Plaintiffs pray that this Court enter and order the following affirmative and other relief:

73. Order and enter judgement against all Defendants to rescind the Plaintiffs' layoff and reinstate them to their prior positions with full back pay, benefits, and other make whole relief with pre-judgment interest;

74. Order and enter judgment against all Defendants to pay damages to Plaintiffs for actual, general, special, compensatory damages, including emotional distress and reputational damage;

75. Order and enter judgment against all Defendants to pay the costs of litigating this action and reasonable attorneys' fees;

76. Order and enter judgment against all Defendants to jointly and severally pay punitive damages;

77. Order and enter judgment against all Defendants to cease and desist from laying off the Plaintiffs in contravention of their federal constitutional rights;

78. Order such other relief as this Court deems just and proper.

## COUNT III: VIOLATION 42 U.S.C. § 1983, 14TH AMENDMENT DEPRIVATION OF A PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW AGAINST ALL DEFENDANTS

79. All prior paragraphs, *supra*, are restated, realleged, and incorporated by reference herein as if fully included here.

80. Plaintiffs have an actual property interest protected by the Fourteenth Amendment pursuant to the Cook County Sheriff's Merit Board Act, 55 ILCS 3/7001, *et seq.* ("the Act"), and by a clearly implied promise of continued employment. *See Villaci v. Herrell*, Memorandum Opinion and Order, No. 14 C 3907, p. 17 (Judge Bucklo, December 18, 2014) (citing *Palka v. Shleton*, 623 F.3d 447, 452 (7th Cir. 2010) (internal quotations omitted)).

81. Plaintiffs have an actual property interest under the Act because same provides that Correctional Captains are subject to "for cause" terminations only. *See* 735 ILCS 3/7012. Plaintiffs are called "Commanders," but, in fact and substance, are functionally the same as merit rank Correctional Captains.

82. Plaintiffs also have an actual property interest under the Act because all Plaintiffs hold a "hard rank," which is the last certified merit rank position they occupied prior to appointment to Commander. For Plaintiffs promoted from Lieutenant to Commander, their "hard rank" is Lieutenant.

83. Plaintiffs also have an actual property interest by clearly implied promise for continued employment when they each completed their one-year probationary period as Captain / Commander. By clear implication, once they completed their probationary period, they became more than "at will" employees and were entitled to "for cause" termination rights.

84. At the time of Plaintiffs' layoff, Defendants deprived Plaintiffs of a pre-termination hearing or opportunity to be heard, except for a cursory "exit interview" in which COBRA and pension-rights notices were given. The exit interviews were not with anyone from the Sheriff's office with any ability to negotiate the layoffs, provide mitigating measures, provide recall rights, discuss "bumping" rights, or any other substantive measures pertaining to the job action.

85. Defendant Dart personally directed the Defendant Whittler to accord only the cursory exit interview process to the Plaintiffs, and Defendant Whittler personally effectuated such command through designees.

86. All Defendants acted under color of law at the times they were personally involved in the deprivation of Plaintiffs' constitutional due process rights and

acted with malicious, reckless and/or deliberate indifference to the inadequacy of layoffs without proper due process.

WHEREFORE, Plaintiffs pray that this Court enter and order the following affirmative and other relief:

87. Order and enter judgment against all Defendants to rescind the Plaintiffs' layoffs and reinstate them to their prior positions with full back pay, benefits, and other make whole relief with pre-judgment interest;

88. Order and enter judgment against all Defendants to pay damages to Plaintiffs for actual, general, special, compensatory damages, including emotional distress and reputational damage;

89. Order and enter judgment against all Defendants to pay the costs of litigating this action and reasonable attorneys' fees;

90. Order and enter judgment against all Defendants to jointly and severally pay punitive damages;

91. Order and enter judgment against all Defendants to cease and desist from laying off the Plaintiffs in contravention of their federal constitutional rights;

92. Order such other relief as this Court deems just and proper

## COUNT IV: VIOLATION 42 U.S.C. § 1983, 14TH AMENDMENT EQUAL PROTECTION AGAINST ALL DEFENDANTS

93. On information and belief, Plaintiffs were uniformly laid off while persons in Director and other officer positions were offered lower-ranking positions in lieu of layoff.

94. Plaintiffs were not offered lower-ranking or other positions in lieu of layoff.

95. Plaintiff Garcia explicitly asked if he could demote to a lower rank and was denied on the grounds that there were no vacancies; however, days later Plaintiffs learned, on information and belief, of Directors who were allowed to take other positions

96. Defendants were personally involved and/or acquiesced in the decision to permit certain Directors to obtain other positions while not affording the same right to the Plaintiffs.

WHEREFORE, Plaintiffs pray that this Court enter and order the following affirmative and other relief:

97. Order and enter judgment against all Defendants to rescind the Plaintiffs' layoff and reinstate them to their prior positions with full back pay, benefits, and other make whole relief with pre-judgment interest;

98. Order and enter judgment against all Defendants to pay damages to Plaintiffs for actual, general, special, compensatory damages, including emotional distress and reputational damage;

99. Order and enter judgment against all Defendants to pay the costs of litigating this action and reasonable attorneys' fees;

100.     Order and enter judgment against all Defendants to jointly and severally pay punitive damages;

101.     Order and enter judgment against all Defendants to cease and desist from laying off the Plaintiffs in contravention of their federal constitutional rights;

102.     Order such other relief as this Court deems just and proper.

## COUNT V:  REQUEST FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

103.     Plaintiffs repeats, re-alleges and incorporates by reference, the allegations in all preceding paragraphs of this Complaint, with the same force and effect as if herein set forth.

104.     Plaintiffs seek that the Court declare that laying off the Plaintiffs without due process was in violation of the Fourteenth Amendment.

105.     Plaintiffs seek that the Court declare that the title change from Correctional Captain to Correctional Commander was and is a violation of the Merit Board's rules and is, therefore, void, a nullity, without legal effect.

106.     Plaintiffs seek that the Court declare that their layoff was in retaliation for their exercise of rights guaranteed by the First Amendment, including the rights to speech and association.

107.     Plaintiffs seek that the Court declare that laying off the Plaintiffs without consideration for "hard rank" was a violation of state law and the Fourteenth Amendment.

108.     There is a justiciable case and controversy, and Plaintiffs have tangible and practical legal and equitable interests in the relief sought.

WHEREFORE, Plaintiffs respectfully requests that this Court:

109.     Award compensatory damages, including statutory damages where available in favor of Plaintiffs;

110.      Grant declaratory relief holding that Defendants violated the First and/or Fourteenth Amendment;

111.     Grant declaratory relief holding that Defendants wrongly laid off Plaintiffs without regard to their merit rank; and,

112.     Grant declaratory relief for such other matters as the Court deems just and proper.

*Plaintiffs hereby make a Jury Demand as to all counts.

December 15, 2017

Respectfully,

**s\ Cass T. Casper, ESQ.**
_____

TALON LAW, LLC
1153 West Lunt Avenue, Suite 253
Chicago, Illinois 60626
Phone: (312) 351-2478

Fax: (312) 276-4930
Email: ctc@talonlaw.com

**s\ Christopher Cooper, ESQ., Ph.D.**
_____

Law Office of Christopher Cooper, INC.
79 West Monroe Street, Suite 1213 [or]
3620 W. 80th Lane, Merrillville, IN 46410
Tel: 312 473 2968 or 219 228 4396 FAX: 866 334 7458 EMAIL: cooperlaw3234@gmail.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies and states that the foregoing Complaint was served on the below-designated attorney by electronic service via the Court's ECF System, and by electronic mail as indicated below, on December 15, 2017.

Kevin Frey, kevin.frey@cookcountyil.gov

*s/Cass T. Casper*

_____

Cass T. Casper