# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CARMEN CONSOLINO, et al. | ) | |
| | ) | Case No. 17-cv-09011 |
| Plaintiffs, | ) | |
| | ) | Hon. Robert M. Dow, Jr. |
| v. | ) | |
| | ) | Magistrate Hon. Sidney I. Schenkier |
| THOMAS J. DART, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**SHERIFF DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Plaintiffs are former Correctional Commanders who filed a Second Amended Complaint ("SAC") challenging their layoffs from the Cook County Sheriff's Office (CCSO) during Cook County's budget crisis last year. The majority of Plaintiffs' Complaint fails as a matter of law and should be dismissed: the due process claim (Count III) fails because Plaintiffs do not possess a cognizable property interest; the equal protection claim (Count IV) fails because class-of-one claims are prohibited in public employment, and they have not identified similarly situated employees or alleged Defendants acted without a rational basis; all *Monell* claims (Count V) based on due process and equal protection violations fail for the same reasons, and the remaining *Monell* claims fail to sufficiently allege a policy, widespread practice, or act by a final policymaker; the Illinois Whistleblower Act (Count VII) and common law retaliatory discharge claims (Count VIII) should be dismissed because the Sheriff Defendants are immune under the Tort Immunity Act; the Whistleblower Act claims should also be dismissed because the Sheriff Defendants are not employers within the meaning of the statute and the claim fails as a matter of law; the retaliatory discharge claim also fails because the types of violations alleged here are not recognized in common law; and Defendants in their official capacity are immune from punitive damages.

### Alleged Facts[1]

Plaintiffs worked as Correctional Commanders within the CCSO, until they were laid off on December 4, 2017, as part of budget cuts caused by the repeal of the Soda Tax. (SAC ¶¶1, 5.) Consolino, Thomas, and Chubb previously served as Correctional Captains and Belk, Garcia, and Germany previously served as Lieutenants until their positions changed to Commander. (*Id*. ¶¶24-29.) Plaintiffs allege they were unlawfully targeted for layoffs because they spoke out about workplace issues (*id*. ¶¶12, 41-44); filed a unionization petition in December 2013, participated in a unionization hearing in 2014 and 2015, and an ALJ recommended on August 2, 2017, that they be allowed to form a union— which recommendation the Illinois Labor Relations Board overturned on February 6, 2018, and held the commanders could not form a union. (*Id*. ¶¶45-51.) Plaintiffs also allege they were denied hearings, and opportunities to transfer positions or take salary cuts in lieu of being laid off while other employees were allowed to do so. (*Id*. ¶¶52-59.)

### Argument

A court should grant a Rule 12(b)(6) motion to dismiss where a plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts take well-pled facts alleged in the complaint as true and draw all reasonable inferences in plaintiff's favor, but conclusory allegations which recite elements of the claim are not entitled to this presumption. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). A complaint that "tenders naked assertion[s] devoid of further factual enhancement" will not do. *Iqbal*, 556 U.S. at 678.

### I. Plaintiffs Do Not Have A Cognizable Property Interest In The Commander Position.

The Due Process Clause prohibits states from, "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. Plaintiffs do not indicate

---

[1] The factual statements in this section are taken from Plaintiffs' second amended complaint ("SAC") (Dckt. No. 32) and are assumed as true only for purposes of this motion.

whether they are asserting procedural or substantive due process, but both fail. Due process claims must include: "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Forgue v. Chicago*, 873 F.3d 962, 969 (7th Cir. 2017). A protected property interest, "is a necessary predicate," of a substantive due process claim.[2] *Aguilera v. Chicago Pub. Sch.*, No. 11 C 9241, 2014 WL 4814896, *3 (N.D. Ill. Sep. 29, 2014) (citing *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003).

Here, Plaintiffs' due process claim is doomed because they do not have a property interest in their employment. Whether or not a property interest exists is the "threshold" question in due process claims. *Cole v. Milwaukee Area Technical Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). "Procedural due process protects a person's continued public employment only if that person has 'a legitimate claim of entitlement' to that continued employment." *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). "Property interests are not created by the Constitution; rather, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Bruce v. Bd. Of Educ. of Chicago*, 2011 WL 3895125, *4 (N.D. Ill. 2011) (quoting *Roth*, 408 U.S. at 577). This Court must look to Illinois law, therefore, to determine the extent of Plaintiffs' property interest.

It is well settled in Illinois that "terms of employment must provide that the termination will only be for cause or otherwise evince mutually explicit understandings of continued employment" for there to be a property interest in employment. *Meade*, 770 F.3d at 686 (quoting *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013)). Illinois law presumes

---

[2] Substantive due process claims are limited to fundamental rights, *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010), but "employment-related rights are not fundamental," therefore, "termination of public employment is not actionable as a violation of substantive due process unless" another constitutional right is alleged to have been violated. *Id.* A First Amendment claim, "not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Lawlor v. Metro. Water Reclamation Dist.*, No. 17-cv-117, 2018 U.S. Dist. LEXIS 40716, *35 (N.D. Ill. Mar. 13, 2018).

"employment is at-will, and thus not entitled to due process protection." *Rujawicz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). In the employment context, property interests can arise in two ways: (1) an independent source such as state law securing certain benefits; or (2) by a clearly implied promise of continued employment. *Bruce*, 2011 WL 3895125 at *4 (internal quotations omitted).

Plaintiffs point to two sources they allege create a property interest: (1) the Cook County Sheriff's Merit Board Act (the "Act"), 55 ILCS 3/7001, *et seq.*; and (2) a clearly implied promise of continued employment. (SAC ¶88.) Neither source provides Plaintiffs with a property interest.

**A.    The Act Does Not Convey A Property Right Or Apply To Commanders.**

Plaintiffs argue they have a property interest because the Act "provided that Correctional Captains are subject to 'for cause' terminations only," and because they hold a "hard rank," which they define as "the last certified merit rank position they occupied prior to appointment to Commander." (*Id.* ¶¶89-90 (citing 55 ILCS 3/7012)). These arguments may be quickly rejected.

The Act endows the Cook County Sheriff's Merit Board with the power to, "establish a classification of ranks including those positions which shall be exempt from merit classification." 55 ILCS 5/3-7006. Article VI of the Board's Rules adopts the following classifications:

1.    Correctional Captain
2.    Correctional Lieutenant
3.    Correctional Sergeant
4.    Correctional Officer
5.    *Individuals serving in positions outside the above classified ranks will be exempt from merit classification.*

(Sheriff's Merit Bd. Rules and Regulations, Ex. 1 (emphasis added).) Commanders are *not* included and are, therefore, "exempt from merit classification." *Id.* Plaintiffs concede they were serving as Commanders and do not allege Commander is a merit rank position. (SAC ¶¶24-29.) Instead they argue their duties as Commanders were "nearly identical to Correctional Captain."

4

(*Id*. ¶¶10-11, 89.) Even assuming that were true, however, the fact is Plaintiffs were Commanders and Commanders are not merit rank positions under the Act.

Plaintiffs also claim a property interest via a "hard rank" under the Act, "which is the last certified merit rank position they occupied prior to appointment to Commander." (*Id.* ¶90.) Plaintiffs provide no support for this proposition and do not even explain how this purported "hard rank" translates into a property interest in the Commander position. In fact, the term "hard rank" does not appear anywhere in the Act or the Board's rules. (*See generally* 55 ILCS 5/3 et seq.; Ex. 1.) In short, neither the Act nor the Board's rules provide Plaintiffs with a property interest.

### B. Merit Employees Are Not Exempt From Layoffs.

Even if the Commanders were covered by the Act under either of Plaintiffs' theories, the claim that Section 7012 of the Act provides them with a property interest and requires "for cause terminations only," is far off the mark. (SAC ¶89.) The plain language of section 7012 of the Act reveals that *it does not apply to layoffs,* which is the only employment action at issue here.

In an analogous case, *Chicago Teachers Union, Local No. 1 v. Board of Education*, the Seventh Circuit certified questions to the Illinois Supreme Court regarding due process rights of teachers who were laid off. 963 N.E.2d 918 (Ill. 2012). The district court ruled in favor of the union, finding the teachers had a substantive right to continued employment through the Illinois School Code's provisions regarding completing probation, for cause removal, and written notice of charges and hearing. *Id.* at 921 (construing 105 ILCS 5/34-84, 34-85). The Seventh Circuit initially agreed but vacated its ruling and certified the question for the Illinois Supreme Court. *Id.* at 922. The Illinois Supreme Court rejected the union's argument and pointed to an earlier decision where it found the Illinois School Code's probation and for cause removal sections did "not exempt

tenured teachers from layoff." *Id.* at 924 (citing *Land v. Bd. of Educ. of Chicago*, 781 N.E.2d 249 (Ill. 2002)). This Court should follow *Land* in assessing Plaintiffs' property rights.

Section 7011 of the Act gives the Sheriff's authority to enact discipline for violations of the Board's rules and regulations and Section 7012 provides the procedure for enacting discipline:

> removed, demoted or suspended except for cause, *upon written charges* filed with the Board by the Sheriff and a *hearing before the Board* thereon upon not less than 10 days' notice at a place to be designated by the chairman thereof. At such hearing, *the accused deputy sheriff* shall be afforded full opportunity to be heard in *his or her own defense* and to produce proof in his or her defense.

55 ILCS 3/7012 (emphasis added). Layoffs are not mentioned in the Act, which focuses on discharge. Discharge for cause is "associated with shortcomings or deficiencies in an employee's actual job performance," while layoffs, "are unrelated to actual job performance [and] customarily occur[] as the result of such outside forces as economic decline . . . ." *Land v. Bd. of Educ. of Chicago*, 757 N.E.2d 912, 920 (Ill. App. Ct. 2001). Section 7012's plain language provides a process for merit rank employees charged with wrongdoing to be heard and defend themselves. It does not exempt merit employees from being laid off during a financial crisis. Thus, even if Plaintiffs had for cause termination rights, such rights would not exempt them from layoffs.

### C. Plaintiffs Do Not Sufficiently Allege A Clearly Implied Promise.

Having failed to establish a property right based in any statute, Plaintiffs must point to a "contract or understanding limiting the ability of the [government] to discharge [them]." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). Plaintiffs cite two facts in support of a clearly implied promise of continued employment: (1) completion of a one-year probationary period as "Captain/Commander"; and (2) being subject to progressive discipline. (*Id.* ¶¶88, 91-92.) The first argument should be rejected, as detailed above, because the Illinois Supreme Court has explained that completing probation and being subject to for cause termination does not exempt

6

employees from layoff.  *Chicago Teachers Union Local No. 1*, 963 N.E.2d. at 924.  Plaintiffs'

argument regarding progressive discipline fairs no better.  (SAC ¶92.)  In *Catinella v. County of*

*Cook*, a plaintiff claimed a property interest by virtue of being "subject to progressive discipline

pursuant to County of Cook Personnel Rules."  230 F.Supp.3d 880, 886 (N.D. Ill. 2016).  The

court rejected the argument, explaining an "unadorned refence to progressive discipline" is

insufficient "to state a protected property interest in [plaintiff's] job."  *Id.*

Plaintiffs' reference to a probation and progressive discipline are nothing more than "naked

assertion[s]" and should be rejected.  *Iqbal*, 556 U.S. at 678.  What is more, CCSO employment

forms and internal procedures, "cannot be read to alter the plain language of the statute," which

does not include Commanders as merit employees who possess a property interest in continued

employment.  *Redd v. Nolan*, 718 F.Supp.3d 927, 936 (N.D. Ill. 2010).  Finally, even if for cause

termination and progressive discipline applied, Plaintiffs were not terminated, they were laid off—

a fact Plaintiffs repeatedly admit throughout their complaint.  (*See, e.g.* SAC ¶¶6, 7, 13, 14.)

## II.     Plaintiffs Failed To Sufficiently Allege A Claim Under Equal Protection.

Fourteenth Amendment Equal protection claims typically prohibit the government from

discriminating on the basis of someone's race, gender, or national origin.  *Lawlor*, 2018 U.S. Dist.

LEXIS 40716 at *36.  A claim the government chose someone for different treatment without any

rational basis is referred to as a "class-of-one claim."  *Id.* (citing *Jarmuth v. City of Chicago*, 43 F.

Supp. 3d 889, 893 (N.D. Ill. 2014)).  To state an equal protection claim under the class-of-one

theory, Plaintiffs must allege they have been "intentionally treated differently from others similarly

situated and that there is no rational basis for their difference in treatment."  *Engquist v. Oregon*,

553 U.S. 591, 601-02 (2008).  Here, Plaintiffs claim Defendants laid them off while allowing

directors and other employees to move to lower-ranking positions or taking lower-salaries instead of being laid off.  (SAC ¶97, 98.)  Plaintiffs' claim stumbles out of the blocks.

### A.    Class-Of-One Equal Protection Claims Are Prohibited In Public Employment.

The Supreme Court has held "a 'class-of-one' theory of equal protection has no place in the public employment context."  *Engquist*, 553 U.S. at 594.  The *Engquist* Court explained government actions *as an employer* "by their nature involve discretionary decision making based on a vast array of subjective individualized assessments."  *Id*. at 598, 603.  "To treat employees differently is not to classify them in a way that raises equal protection concerns," but instead, "is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."  *Id*. at 605.  Plaintiffs' equal protection claim, therefore, fails as a matter of law.

### B.    Plaintiffs Failed To Allege Similarly Situated Employees Treated Differently.

Plaintiffs' equal protection claim also fails because they have not alleged similarly situated employees were treated more favorably.  Differential treatment from "someone who is *'prima facie identical' in all relevant respects"* is an "essential element" of an equal protection claim.  *Lawlor*, 2018 U.S. Dist. LEXIS 40716 at *37 (emphasis added) (quoting *Purze v. Vill. Of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)).  In this case, Plaintiffs allege that *directors* and employees in "*other positions*" were allowed to take demotions to lower-ranking positions or take pay cuts to avoid being laid off.  (SAC ¶97.)  Thus, Plaintiffs explicitly acknowledge that those purported other employees were not similarly situated to them because *they were not Commanders*.

### C.    Plaintiffs' Have Not Alleged Defendants Acted Without Rational Basis.

Finally, Plaintiffs' equal protection claim fails because they have not sufficiently alleged Defendants acted without any rational basis.  "[E]ven at the pleading stage a class-of-one plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis" for the

government's action. *Jackson v. Vill. Of W. Springs*, 612 F. App'x 842, 846-47 (7th Cir. 2015) (quotations omitted). And if the court can "come up with a rational basis for the challenged action, that will be the end of the matter-animus or no." *Id.* What is more, "[a] 'presumption of rationality' attaches to government action challenged in class-of-one claims." *Lawlor*, 2018 U.S. Dist. LEXIS 40716 at *38 (quoting *Flying J Inc. v. New Haven*, 549 F.3d 538, 548 (7th Cir. 2008) (affirming dismissal of class-of-one claim for failure "to overcome the presumption of rationality that attaches to government actions")). Here, Plaintiffs make the "naked assertion" that Defendants had "no rational basis" for allowing employees in other positions to take demotions or salary reductions. (SAC ¶¶97, 100-102.) That does not negate any "reasonably conceivable" rational basis or overcome the presumption of rationality. *Jackson*, 612 F. App'x at 846-47; *Flying J Inc.*, 549 F.3d at 548. Indeed, in light of Cook County's budget crisis, an economic rational basis is self-evident.

## III. Plaintiffs' *Monell* Claims Also Fail As A Matter Of Law And Must Be Dismissed.

Count V alleges that all defendants are liable under §1983 for violations of the First Amendment (protected speech and association) and Fourteenth Amendment (due process and equal protection). (*See* SAC ¶¶105-115.) Under *Monell v. Department of Social Services*, a municipality can be held liable under §1983 when the constitutional deprivation is caused by the municipality's own conduct. 436 U.S. 658, 694 (1978). "[T]o establish municipal liability, a plaintiff must show the existence of an official policy or other governmental custom that not only causes but is the moving force behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (internal quotation marks omitted). Three types of municipal action can support a *Monell* claim: (1) an express policy causing a constitutional violation; (2) a widespread practice that is permanent enough to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by someone

with final policymaking authority. *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 292, 303 (7th Cir. 2009). Plaintiffs allege all three, but the Court should quickly narrow the scope.

First, the individual Defendants must be dismissed because they are not proper defendants in a *Monell* claim. *Smith v. Dart*, No. 11 C 0014, 2012 WL 965115, *9 (N.D. Ill. Mar. 21, 2012). And Whittler in her official capacity should also be dismissed as redundant of the claims against Sheriff Dart. *Cruz v. Dart*, No. 11 C 00630, 2012 WL 5512275, at *5, 7 (N.D. Ill. Nov. 13, 2012); *Smith*, 2012 WL 965115, at *9. Thus, only Sheriff Dart in his official capacity is proper.

Second, because Plaintiffs' due process and equal protection claims against the individual defendants fail (see above), Defendants cannot be liable under *Monell* either which requires, "a constitutional deprivation." *Palka*, 623 F.3d at 455; *Christensen v. County of Boone*, 483 F.3d 454, 465 (7th Cir. 2007) ("Because we have determined that all of plaintiffs' claims under federal law were properly dismissed, there can be no §1983 liability for Boone County either.").

Finally, the First Amendment claims based on policies, practices, and final policymakers fail because they are nothing more than threadbare recitations of the elements of *Monell* claims.

### A. Policies

In order to state a *Monell* claim based on an express policy, a plaintiff must, "point to . . . language in the . . . policy that is constitutionally suspect." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). "Mere 'legal conclusions or elements of the cause of action' must be disregarded." *Clay v. Cook Cnty.*, No. 14-cv-10515 2017 WL 878451, *2 (N.D. Ill. Mar. 6, 2017). "Boilerplate allegations that repeat the elements of a *Monell* claim without any further factual content are dismissed for failure to state a claim." *Id.* Here, Plaintiffs identify Article S of the Sheriff's Employment Action Manual ("SEAM") and "other policies," but do not identify any constitutionally suspect language or point to facts beyond their own experience. (SAC ¶¶64, 108.)

10

These "boilerplate" allegations merely repeat the elements of a *Monell* claim and do not include sufficient factual content to withstand this motion to dismiss. *Clay*, 2017 WL 878451 at *2. Even if Plaintiffs had cited actual language from Article S, as they must, their claim would still fail because Article S merely provides the *procedure* for CCSO layoffs—it does identify positions to be laid off and did not select Plaintiffs for layoff. (SEAM Article S Ex. 2.) What is more, Plaintiffs must "plead facts that show there is a true municipal policy at issue, not a random event." *Liska v. Dart*, No. 13 C 1991, 2014 WL 3704635, at *10 (N.D. Ill. July 23, 2014). Here, Plaintiffs only point to their singular experience with Article S and unnamed "other policies" which allegedly caused a single constitutional deprivation in the form of a *one-time* lay-off. (SAC ¶108.)

## B. Widespread Practice

Plaintiffs also claim Defendants established a widespread practice of retaliating and discriminating against employees who engaged in protected activity. (*Id.* ¶109.) But Plaintiffs only provide conclusory allegations in *a single paragraph* in their Complaint alleging Defendants: (1) terminated and disciplined officers who, file grievances, attend union organizing meetings, speak to the media, and testify in hearings against the Sheriff in defense of other officers; (2) terminated Plaintiffs after their union organizing drive; (3) kept written statistics on officers who request fellow-officers represent them at disciplinary interviews; and (4) kept written statistics on officer grievances and complaints. (*Id.*) *Plaintiffs provide no facts*, as the law requires, regarding these widespread practices—for example, they do not identify who was injured, who caused the injury, when or why it happened, or how the practices resulted in a constitutional deprivation. These unsupported allegations cannot establish *Monell* liability. *Iqbal*, 556 U.S. at 678.

The first, third, and fourth "practices" fail because, under *Monell*, courts require "plaintiffs to show that their injuries were caused by the policies or practices complained of." *Thomas v.*

*Cook County Sheriff's Department*, 604 F.3d 293, 306 (7th Cir. 2009). "This is an explicit requirement of §1983 and an uncontroversial application of basic tort law." *Id.* Plaintiffs do not allege that any of them was terminated for filing a grievance, speaking to the media, or participating in disciplinary interviews. Thus, these purported "widespread practices" could not have been the cause of their injuries and must be dismissed. *Thomas*, 604 F.3d at 306. What is more, they are conclusory allegations devoid of factual development and should be dismissed. *Wuerffel v. Cook Cnty. Sheriff's Office*, No. 14-c-3990, 2016 WL 1660497, *13 (N.D. Ill. Apr. 27, 2016) ("These allegations are not only conclusory, but they also fail to allege who the other complainants are, how they were retaliated against and, more importantly, how these separate incidents weave together into a cognizable [County] policy.") (internal quotation omitted).

Plaintiffs' claim of a widespread practice or custom of terminating Plaintiffs after their union organizing drive also fails because it is limited to a single instance. Although the Seventh Circuit has not adopted a bright line rule regarding the number of instances that constitute a widespread custom or practice, "the allegedly unconstitutional conduct must be more than one instance," and even three incidents may not be enough. *Wilson v. Cook Cnty.*, 742 F.3d 755, 780 (7th Cir. 2014); *Bless v. Cook Cnty. Sheriff's Office*, No. 13-cv-4271, 2016 WL 958554, *6 (N.D. Ill. Feb. 27, 2015). Plaintiffs fail this test because they have not cited a single other instance of allegedly unconstitutional conduct.

### C. Final Policymaker

Finally, Plaintiffs offer no facts to support their contention that they were injured by final policymakers other than a conclusory allegation. (SAC ¶62.) Plaintiffs fail to allege that a person with final policy making authority established a policy within their authority that was the moving force behind the alleged unlawful act. They do not explain how the Sheriff Defendants acted, what

policies they created or violated, when they did so, or how it resulted in a constitutional deprivation. Instead, Plaintiffs merely make the bare assertion that the Sheriff Defendants selected them for layoffs in retaliation for protected activity—merely a straightforward recitation of the elements of a First Amendment Monell claim which is insufficient. Plaintiffs also offer no facts in support of their conclusion that Defendant Whittler is a final policymaker under Illinois law— nor could they. Plaintiffs acknowledge this fact when they allege that Sheriff Dart directed Defendant Whittler to layoff Plaintiffs. (SAC ¶63.) The Court need not accept these threadbare accusations which do not plausibly state a claim. *Iqbal*, 556 U.S. at 678.

## IV. Count VII (Illinois' Whistleblower Act) And Count VIII (Common Law Retaliatory Discharge) Must Be Dismissed As Dart and Whittler Are Immune From Liability.

Defendants Dart and Whittler are immune from any liability under the Tort Immunity Act (the "Act"), and Plaintiffs' claims under the Illinois' Whistleblower Act ("IWA") (Count VII) and common law retaliatory discharge (Count VIII), respectively, must be dismissed. More specifically, section 2-201 of the Act insulates public officers, such as Dart and Whittler, from liability based on discretionary actions and policy decisions:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of discretion even though abused.

745 ILCS 10/2-201. Importantly, that immunity extends to Dart and Whittler even if their actions were for "corrupt or malicious motives," akin to willful or wanton conduct. *See, e.g. Village of Bloomingdale v. CDG Enterprises*, 752 N.E.2d 1090, 1098, 196 Ill.2d 484, 494 (Ill. 2001); *Kevin's Towing, Inc. v. Thomas*, 814 N.E.2d 1003, 1008, 351 Ill. App.3d 540 (2d Dist. 2004) (finding no exception for "corrupt or malicious" motives to immunity under Section 2-201); *Weiler v. Vill. of Oak Lawn*, Case No. 14-cv-4991 at *15 (N.D. Ill. Mar. 31, 2015).

For immunity to attach, a public employee's conduct must be both an exercise of discretion and a policy determination.[3] *See Harinek v. 161 North Clark Street Ltd. Partnership,* 692 N.E.2d 1177, 1181, 181 Ill.2d 335, 341 (Ill. 1998). Discretionary acts are those which are "unique to a particular public office" (*id.* at 1182) and the action taken is "the result of judgment or discretion." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 194 (1997). Policy determinations, in turn, are "decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Harinek*, 692 N.E.2d at 1181. Importantly, it is well settled in Illinois that hiring and firing decisions are both discretionary acts *and* policy determinations. *See Brooks v. Daley*, 29 N.E.3d 1108, 1114 (1st Dist. 2015); *see also Hanania v. Loren-Maltese*, 319 F.Supp.2d 814, 836 (N.D. Ill., 2004) (holding that, "[s]ince 'decisions of hiring and firing are discretionary acts, and require the balancing of interests, they warrant immunity under §2-201.").

Here, it is without question that Defendants Dart and Whittler are entitled to immunity under Section 2-201. Plaintiffs' Counts VII and VIII both allege that they engaged in some activity for which Defendants retaliated against them, resulting in their lay off. *See* SAC ¶¶ 131, 137. Put another way, according to Plaintiffs, the Defendants made a decision to lay them off—an act courts have long considered subject to §2-201 immunity. Plaintiffs' conclusory allegations of a malicious motivation for their lay off do not matter, as those are not exceptions to §2-201 immunity. *Kevin's Towing*, 814 N.E.2d at 1008. Put another way, even if Plaintiffs claims prove to be factually accurate, the legal effect is the same—Defendants Dart and Whittler are immune from liability under §2-201 of the Act and Counts VII and VIII must be dismissed.

---

[3] It is important to note, however, that the "policy determination" in the immunity context is an entirely different concept than how the term "policy making authority" is used in the §1983 context. Despite the unfortunate coincidence in terminology, the analysis courts use is distinct.

V.    **The Illinois' Whistleblower Act Must Be Dismissed As To Defendants Dart And Whittler As They Are Not "Employers" As Defined Under The IWA.**

In addition to Defendants Dart and Whittler's immunity to Plaintiffs' IWA claim, Count VII must be dismissed against them in their individual capacities for another reason—neither of them were Plaintiffs' "employer," as defined under Section 5 of the IWA, and thus the IWA cannot provide for an individual cause of action against them. More specifically, Section 5 of the IWA defines an "employer" as including "an individual … and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees." 740 ILCS 174/5. While Illinois reviewing courts have not yet addressed whether a defendant named in both their individual and official capacity may be liable under the Act, federal courts have done so, and have persuasively concluded that where government employees are named in their individual capacities, they are not "employers" subject to individual liability under the Act.

In directly addressing the issue at hand, Judge Zagel explained:

> The Act clearly allows for the possibility that an individual may be an employer. It also makes clear that an employer may be held liable for the conduct of individuals acting on the employer's behalf within the scope of their authority. <u>But it does not then follow that such individuals who are not themselves employers in the first instance may be held individually liable as employers in addition to the employer on whose behalf they were acting.</u>

*Hernandez v. Cook Cnty. Sheriff's Office*, Case No. 13-cv-7949 (N.D. Ill. Apr. 3, 2014) (internal citations omitted) (emphasis added). Here, Plaintiffs allege <u>all</u> Defendants are "employers within the meaning of the Illinois' Whistleblower Act." SAC at ¶ 126. But Plaintiffs cannot plausibly plead or claim that Defendants Dart or Whittler directly employed them. Indeed, Plaintiffs admit as much – it was the Cook County Department of Corrections who employed them. *Id.* at ¶ 1. As such, and as Judge Zagel held in *Hernandez*, it does not follow that Dart and Whittler, as non-employers, can be legally transformed into "employers" as defined under Section 5 of the IWA,

15

subjecting them to individual liability. For that additional reason, to the extent Count VII is brought against Defendants Dart and Whittler in their individual capacities, it must be dismissed.

Finally, to the extent Plaintiffs' claim is against Defendant Whittler, in her official capacity, it must also be dismissed. Claims against the Sheriff's Office's department heads and directors are in essence claims against the Cook County Sheriff. *Wagner v. Evans*, No. 15cv6165, 2016 U.S. Dist. LEXIS 11964, at *7 (N.D. Ill. Feb. 2, 2016); *Schlicher v. Bd of Fire and Police Commissioners of the Village of Westmont,* 363 Ill. App. 3d 869, 883 (2d Dist. 2006) ("An official capacity suit against an individual is to be treated as another form of a suit against the government entity of which the individual is a part."). While Plaintiffs do not name the correct entity in their suit – the CCSO – it is without question the real party in interest. While an official capacity suit against Defendant Dart may be synonymous with a suit against the CCSO, the same is not true for Defendant Whittler. *Id.* For that additional reason, Count VII as to Whittler should be dismissed.

## VI. Plaintiffs' Whistleblower Act Claim Also Fails Because Internal Complaints Are Not Actionable And There Is No Allegation Defendants' Required Plaintiffs To Participate In Any Alleged Illegal Activity.

Plaintiffs do not explain which section of the Act they rely on to plead their claim. They seem to imply, however, that their claim is rooted in their raising of safety and security concerns to the CCSO and the Cook County Board, indicating their claim is brought pursuant to §15(b) of the Act. SAC at ¶¶ 127, 130. Section 15(b) of the Act prohibits an employer from retaliating against an "employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b). But as this District and Illinois courts have recognized, any such "disclosure" must be *external*. *See, e.g.*, *Mimedx Grp., Inc. v. Fox*, No. 16 CV 11715, at *22 (N.D. Ill. January 24, 2018) ("Internal reporting is insufficient to

trigger the act's protections."); *see also Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 19, 79 N.E.3d 184, 189 (4th Dist. 2017) (to state a claim under the Act, "the employee must have exposed to view or made known information. Informing the violator his or her actions are improper does not expose to view or make known the alleged improper activity."). Here, apart from Plaintiffs singular and conclusory use of the "external," there are no facts to support anything other than Plaintiffs *internal* reporting of purported rule violations. That kind of report amounts to "[s]imply having a conversation with the wrongdoer about the impropriety of his or her actions" and "is not exposing the alleged improper activity, making it known, or reporting the wrongful conduct." *Sweeney*, 2017 IL App (4th) 160492, ¶ 19, 79 N.E.3d at 189. As a result, to the extent Plaintiffs intend to premise their claim on §15(b) of the Act, their claim fails.

If Plaintiffs instead intended to bring their claim under §20 of the Act, it fares no better. Section 20 prohibits an employer from retaliating "against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. To state such a claim, however, and as a threshold matter, "there must be a request or demand by the employer that the employee engage in the illegal or unlawful conduct." *Roberts v. Bd. of Trs. Cmty. Coll. Dist. No. 508*, 2018 IL App (1st) 170067, ¶ 41 (1st Dist. 2018). Plaintiffs here do not allege, nor could they, that Defendants requested or demanded that they engage in *any* illegal or unlawful conduct. To the extent their claim is premised on §20 of the Act, it therefore fails as a matter of law and must be dismissed.

## VII.    Common Law Retaliatory Discharge Is Narrow And This Court Should Not Accept Plaintiffs' Attempt To Expand It To Cover Entirely New Subject-Matters.

Count VIII attempts to plead a cause of action under Illinois' common law retaliatory discharge doctrine. SAC at ¶¶ 134-139. Plaintiffs allege their layoffs are the result of their concerns of violations of "County Jail Standards," "violate clearly mandated public policy" and

thus amounts to retaliatory discharge. Simple rule violations, however, have never been recognized to rise to the level of the kind of public policy violations prohibited under the narrow doctrine of common law retaliatory discharge, and Plaintiffs claims must fail as a matter of law.

Illinois has recognized a limited cause of action for the tort of retaliatory discharge. *See, e.g.*, *Turner v. Memorial Medical Center*, 911 N.E.2d 369, 374, 233 Ill. 2d 494 (Ill. 2009). To state a valid retaliatory discharge claim, an employee must show that he was dismissed in retaliation for his activities, in contravention of a clearly mandated public policy. *Fellhauer v. Geneva*, 568 N.E.2d 870, 874, 142 Ill.2d 495, 505 (Ill. 1991). Here, Plaintiffs cannot establish the public policy prong, a question of law for the Court. *Turner*, 911 N.E.2d at 375 (collecting cases).

Although "there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal . . . a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer v. International Harvester Co.*, 421 N.E.2d 876, 878-79, 85 Ill.2d 124, 130 (Ill. 1981). Put another way, unless Plaintiffs can point to a specific expression of public policy deriving from the Illinois constitution, statutes, or judicial decisions, they may be discharged for any reason at all. *Id.* Plaintiffs here cannot point to any constitutional clause, statute, or judicial decision to support their claim, because there are none. They rely on nothing more than standards for the operation of the jail – in effect operational rules and procedures.[4] For that reason alone their Count VIII fails.

But more than that, Illinois courts have repeatedly refused to expand the tort of retaliatory discharge in the manner Plaintiffs here suggest. *Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354,

---

[4] Plaintiffs concede as much, noting that their alleged complaints were not about public policy, but to "address overall safety, morale, and efficiency concerns relating to running the Department of Corrections, keeping staff and detainees safe, efficiently utilizing County resources, and raising complaints about management, policy, and practice affecting jail operations as a whole." (SAC ¶42; *see also* SAC at ¶ 131 (referring to the alleged reporting as mere "regulatory violations.") (emphasis added)).

1356, 106 Ill.2d 520, 524 (Ill. 1985). The tort exists as an exception to "at will" employment in only two circumstances: when an employee is discharged for filing, or in anticipation of the filing of, a claim under the Workers' Compensation Act; or when an employee is discharged in retaliation for the reporting of criminal conduct. *See, e.g.*, Jacobson *v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 493, 185 Ill.2d 372, 375 (Ill. 1998); *see also Palmateer*, 421 N.E.2d at 878-79 (tort recognized where employee terminated for reporting criminal activity). Plaintiffs here do not allege any actual or suspected criminal violations. Instead they alleged nothing more than simple rule violations that they allegedly believed affected things like safety, morale, and efficiency (SAC ¶42)—which are insufficient to plead a cause of action under the narrow doctrine of retaliatory discharge. Indeed, even if the alleged operational rule violations could be said to implicate the health or safety of jail personnel or inmates, it still would not rise to the level of public policy. *See, e.g.*, *Turner*, 911 N.E.2d at 376 (collecting cases and noting that even allegations of whistleblowing as to product safety or quality health care are insufficient to plead the tort). Plaintiffs' claims of jail rule violations do not strike at the heart of a citizen's social rights, duties, and responsibilities and, as such, fails as a matter of law and must be dismissed.

## VIII. Defendants In Their Official Capacity Are Immune From Punitive Damages.

Claims for punitive damages against Defendants in their official capacities should be dismissed because they are immune from punitive damages under §1983. *City of Newport v. Fact Concerts, Inc.*, 543 U.S. 247, 271 (1981).

## IX. Plaintiffs' Count VI, Seeking Declaratory Relief, Is Nothing More Than A Restatement Of The Relief Sought In Their Other Counts And Must Be Dismissed.

Plaintiffs' Count VI merely asks that the Court declare they are entitled to the relief sought in each of their other counts. For example, Plaintiffs seek a declaration that "laying off the Plaintiffs without due process was in violation of the Fourteenth Amendment of the United States

Constitution" and that Plaintiffs' layoff "was in retaliation for their exercise of rights guaranteed by the First Amendment of the United States Constitution, including the rights to speech and association." (SAC ¶¶ 120, 122.) Because Plaintiffs do nothing more than restate their substantive counts in the form of a request for declaratory relief, and for all the reasons stated above as to each of those substantive counts, Count VI should be dismissed as well.

<u>Conclusion</u>

For each reason, the Court should dismiss the second amended complaint with prejudice.

Respectfully Submitted,
THOMAS J. DART and ZELDA WHITTLER

Dated: October 4, 2018                    By: /s/ Justin L. Leinenweber
                                              One of Their Attorneys

Justin L. Leinenweber
Leinenweber Baroni & Daffada, LLC
120 N LaSalle St, Ste 2000
Chicago, IL 60602
(312) 380-6635
justin@ilesq.com

Ethan White
Emery Law, Ltd.
3 Grant Square, #268
Hinsdale, IL 60521
(630) 984-0339
ewhite@emerylawltd.com

# Exhibit 1

# *COOK COUNTY SHERIFF'S MERIT BOARD*



## *RULES AND REGULATIONS*

### *Publication Effective Date, OCTOBER 15, 2015*

*COOK COUNTY SHERIFF'S MERIT BOARD*
*COUNTY ADMINISTRATION BUILDING*
*69 W. WASHINGTON STREET- SUITE 1100*
*CHICAGO, ILLINOIS 60602*

*EMAIL: Sheriff.MeritBoard@cookcountyil.gov*
*TELEPHONE: (312) 603-0170*
*FAX: (312) 603-9865*

## ARTICLE IV

## CLASSIFICATION OF RANKS

A.    **Cook County Sheriff's Police Department**

    1.    **Police Lieutenant**

    2.    **Police Sergeant**

    3.    **Police Officer**

    4.    **Individuals serving in positions outside the above classified ranks will be exempt from merit classification.**

B.    **Cook County Department of Corrections**

    1.    **Correctional Captain**

    2.    **Correctional Lieutenant**

    3.    **Correctional Sergeant**

    4.    **Correctional Officer**

    5.    **Individuals serving in positions outside the above classified ranks will be exempt from merit classification.**

C.    **Cook County Sheriff's Court Services Department**

    1.    **Deputy Lieutenant**

    2.    **Deputy Sergeant**

    3.    **Deputy Sheriff**

    4.    **Individuals serving in positions outside the above classified ranks will be exempt from merit classification.**

# Exhibit 2



**ARTICLE S**

### Cook County Sheriff's Office
Sheriff's Employment Action Manual (SEAM)

# LAYOFFS

### S.1   POLICY

It is the policy of the Cook County Sheriff's Office that in the event of budgetary reductions imposed by the County Board or other events or operational needs requiring a reduction of budgeted or grant funded positions, employees will be subject to layoff and possible recall in accordance with the provisions of the applicable collective bargaining agreements. If no collective bargaining agreement applies or the applicable collective bargaining agreement is silent, then Article S shall apply.

### S.2   PROCEDURE

A.   In the event of the need for reductions, the Undersheriff or the authorized designee shall identify potential positions to be eliminated.

B.   The Undersheriff or the authorized designee in consultation with the Chief Operating Officer and any other staff members determined by the Undersheriff or the authorized designee shall determine the number of positions that must be eliminated. The final number of positions to be eliminated shall be forwarded in writing to the Compliance Officer.

C.   A Layoff List will be created, which contains the names and position of all individuals selected for layoff.

D.   The Layoff List must be approved by the Undersheriff or the authorized designee.

E.   The completed Layoff List shall be forwarded to the Compliance Officer.

F.   Exit Interview Process:

    1.   Upon approval of the Layoff List, the Layoff List and all other supporting documentation will be provided to the Executive Director of the Department of Human Resources. The Executive Director or the authorized designee shall notify all employees listed on the Layoff List to report to the Department of Human Resources for a scheduled Exit Interview.

    2.   The Executive Director of the Department of Human Resources or the authorized designee shall complete an Exit Interview Form for each employee listed on the Layoff List, ensure the employee signs and dates it and, if the employee refuses, shall note such refusal and sign and date.

    3.   The Executive Director the Department of Human Resources or the authorized

Cook County Sheriff's Office
Sheriff's Employment Action Manual (SEAM)

SEAM Article S - Layoffs

---

designee shall ensure employees receive a copy of the completed Exit Interview Form and shall answers questions the employee may have regarding the process.

## S.3   CERTIFICATION

The Undersheriff, Executive Director of Human Resources, Chief Operating Officer, Department Head or any of the their authorized designees and all other individuals with material involvement in the layoff process described in this article shall complete and sign a No Political Consideration Certification (NPCC) on all lists and layoff documentation affirming that all layoff decisions made and actions taken were made or taken in accordance with the procedures set forth in this Article.