# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN CONSOLINO, et al., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-09011 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| THOMAS J. DART, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs bring claims against Defendants for retaliation, due process violations, and equal protection violations under 42 U.S.C. § 1983 and various state law theories. Before the Court is Defendants' motion to dismiss Counts III, IV, V, VI, and VII [62]. For the reasons set forth below, Defendants' motion to dismiss is granted with respect to Counts III, IV, VI, and VII, and denied with respect to Count V. The case is set for further status hearing on October 3, 2019 at 9:00 a.m.

## I. Background[1]

The case concerns the termination of Plaintiffs' employment with the Cook County Sheriff's Office (CCSO), allegedly in retaliation for starting a union drive and whistleblowing about conditions in the Cook County Jail. According to the third amended complaint (TAC) [54], Plaintiffs Carmen Consolino, Antonio Belk, Victor Thomas, Cynthia Chubb, Andres Garcia, and Aretha Germany ("Plaintiffs") were longtime employees of the CCSO, each having been in its employ for at least a decade. [54, at ¶¶ 24–29.] In May 2011, the title of the rank of "Correctional Captain" was changed to "Commander." [*Id*. at ¶¶ 16, 38.] By April 2012, each Plaintiff had

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

attained the rank of Commander either as a result of a promotion from Lieutenant or the name change from Correctional Captain. [*Id.* at ¶¶ 24–29.]

Notwithstanding this straightforward narrative, the TAC is not altogether clear about Plaintiffs' actual job titles and ranks following April 2012. This confusion stems from the fact that the Cook County Sheriff's Merit Board apparently recognizes the rank of Correctional Captain, but it does not recognize the rank of Commander. [*Id.* at ¶¶ 11, 96]; see also, *infra*, III.A.1. Merit Board recognition is a big deal, because it comes with the promise that termination will only be "for cause." [*Id.* at ¶ 96.] Plaintiffs submit that the rank of "Commander" is "nearly identical" to that of "Captain." [*Id.* at ¶¶ 10, 29.] In the alternative, Plaintiffs allege that for purposes of merit classification, they retain the last "hard rank" they attained prior to promotion to Correctional Captain or Commander, which apparently would be Lieutenant. [*Id.* at ¶ 40.] But elsewhere, the TAC defines "commander" as a "sworn hard rank." [*Id.* at ¶¶ 24–29.] Finally, Plaintiffs allege that they were similarly situated to "Directors" employed by the CCSO. [*Id.* at ¶¶ 110–111.]

In December 2013, Plaintiffs filed an initial "Majority Interest Petition" and signed union cards, which signaled their collective interest in forming a union. [*Id.* at ¶ 50.] Defendants Sheriff Thomas Dart, Zelda Whittler, Bradley Curry, Nneka Jones Tapia, and Matthew Burke ("Defendants")[2] fought Plaintiffs' union drive, arguing that Plaintiffs were supervisors or managers, and therefore ineligible under state law to form a union. *Id.* Plaintiffs Consolino, Belk, and Chubb regularly attended ILRB hearings, where Consolino and Belk gave testimony regarding the CCSO's labor practices and safety conditions at the Cook County Jail. [*Id.* at ¶¶ 51, 54, 135.] Plaintiffs Garcia and Germany were visibly involved in the union drive and known supporters of

---

[2] Cook County is also named as a defendant [54 at ¶ 32], but only as an indemnitor. See generally [59]. Unless otherwise noted, the term "Defendants" as used in this order does not include Cook County.

unionization, although they did not testify before the ILRB. [*Id*. at ¶ 52.] The Court infers that Plaintiff Thomas also supported unionization in a way that was known to Defendants. [*Id*. at ¶ 53.][3] On August 2, 2017, the ILRB issued a decision allowing the Commanders (*i.e.*, Plaintiffs) to lawfully form a union. [*Id*. at ¶ 56.] Contemporaneous with the union drive, and throughout their employment with CCSO, Plaintiffs made internal complaints about jail conditions and alleged safety code violations. [*Id*. at ¶¶ 44–46.] In retaliation for voicing their concerns, Plaintiffs were shunned from internal management "pre-accountability" and "accountability" meetings. See [*id*. at ¶ 77.]

At some point, Plaintiffs allege, "Defendant Dart passed and enforced SEAM, Article S." [*Id*. at ¶ 119.] SEAM, Article S appears to be a department-wide policy that empowers Defendants to make discretionary layoffs. See [*id*. at ¶¶ 70, 73, 74.] On December 4, 2017, about four months after the favorable ILRB decision, Plaintiffs were laid off from the CCSO. [*Id*. at ¶ 37.] These layoffs, Plaintiffs contend, were directed and carried out by each of the Defendants pursuant to the authorities delineated in SEAM, Article S. [*Id*. at ¶¶ 70, 73, 74, 92.] Plaintiffs also contend that Defendant Dart selected Plaintiffs for layoffs and approved of the final termination orders. [*Id*. at ¶ 68, ¶ 74.] Plaintiffs were not provided with a pre-termination hearing, an opportunity to contest having been laid off, or any other procedure beyond a perfunctory exit interview where they were informed of their pension rights and COBRA. [*Id*. at ¶ 58–60.] Moreover, Plaintiffs were not allowed to accept demotions and "bump" junior officers. [*Id*. at ¶ 17.]

---

[3] The TAC is unclear about Plaintiff Victor Thomas's role in the union drive. Mr. Thomas was initially called to testify before the ILRB on behalf of CCSO leadership (*i.e.*, those opposed to unionization), but the Sheriff's representatives ultimately declined to have Plaintiff Thomas testify. [54 at ¶ 52.] Elsewhere, however, the TAC implies that CSSO leadership failed to call Plaintiff Thomas as a witness because he would not give them favorable testimony. [*Id*. at ¶ 87(f).] Because all reasonable inferences are drawn in favor of the plaintiff when ruling on a 12(b)(6) motion to dismiss, the Court infers that Plaintiff Thomas had pro-union beliefs and was prepared to testify to that effect, which is why his testimony was pulled.

Plaintiffs concede that CCSO was, at the time of the layoffs, reducing personnel costs in other ways beyond firing just them: According to the TAC, the CCSO also demoted, transferred, or reduced the salaries of other employees. [*Id*. at ¶ 57.] As is clear from the briefing, CCSO's broader personnel changes were contemporaneous to and at least partly motivated by the repeal of the "Soda Tax," which left the county in dire budgetary straits. See [67 at 5 n.1]; [60-1 at 2].

Each Plaintiff held the position of Commander for more than one year prior to termination, putting them outside of the one-year probationary period outlined in the Sheriff's Employment Action Manual. [54 at ¶ 43.] Plaintiffs also plead that during their employment, they were subject to progressive discipline but fail to elaborate the terms of such discipline. [*Id*. at ¶ 99.]

On November 27, 2018, Plaintiffs filed the TAC [*Id.*], which asserts six counts against all of the Defendants (except Cook County) in their individual capacities: a violation of Plaintiffs' First Amendment right to freedom of speech pursuant to 42 U.S.C. § 1983 (Count I) [*Id*. at ¶¶ 65–85]; a violation of their First Amendment right to freedom of association pursuant to 42 U.S.C. § 1983 (Count II) [*Id*. at ¶¶ 86–93]; a violation of their Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983 (Count III) [*Id*. at ¶¶ 94–102]; a violation of their Fourteenth Amendment equal protection rights pursuant to 42 U.S.C. § 1983 (Count IV), [*Id*. at ¶¶ 103–115]; a violation of the Illinois Whistleblower Act, 740 ILCS 174/1 et seq. (Count VI), [*Id.* at ¶¶ 128–138]; and common law retaliatory discharge (Count VII), [*Id*. at ¶¶ 139–145]. Plaintiffs also assert a *Monell* claim against Defendant Dart in his official capacity (Count V) [*Id.* at ¶¶ 116–127] and an indemnification claim against Cook County (Count VIII) [*Id.* at ¶¶ 146–147]. Defendants filed a motion to dismiss Counts III, IV, V, VI, and VII pursuant to Federal Rule of Civil Procedure 12(b)(6) [62], asserting that each of the claims fails to assert a claim upon which relief can be granted.

## II.  Legal Standard

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'"  See, *e.g.*, *Lodholtz v. York Risk Serv. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's complaint needs not include "detailed factual allegations," but it must contain more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Thus, the complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  At this stage, the Court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff."  *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)).

## III.  Analysis

### A.  Procedural Due Process (Count III)

The Fourteenth Amendment to the U.S. Constitution forbids states from depriving "any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV § 1.  "To state a claim for a procedural due process violation, a plaintiff must demonstrate (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Manistee Apartments v. City of Chicago*, 844 F.3d 630, 633 (7th Cir. 2016).[4]  Plaintiffs claim that

---

[4] The Plaintiffs' TAC does not specify whether they intend to bring a case under procedural or substantive due process, but the TAC and briefing are both only relevant to procedural due process claims.  [54 at ¶¶ 95–102 (reciting facts relevant to procedural due process claim)]; [67 at 5 (citing procedural due process cases).]  In the event that Plaintiffs intended to bring a substantive due process claim, that must be dismissed.  Substantive due process claims are "limited to violations of fundamental rights, and employment-related rights are not fundamental." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010) (citation omitted).

they had a property interest in their employment, and that Defendants deprived them of that interest without due process. [54 at ¶¶ 95–100.] Defendants seek to dismiss this claim on the ground that Plaintiffs "do not have a property interest in their employment." See [60-1 at 3.]

Although the right to procedural due process is protected by the federal Constitution, property rights themselves "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Thus, the Court must turn to Illinois law to determine the nature and dimension of Plaintiffs' alleged property interest in their employment. See, *e.g.*, *Dibble v. Quinn*, 793 F.3d 803, 810 (7th Cir. 2015). "[E]mployment relationships in Illinois are presumed to be at will." *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013) (citing *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 317 (Ill. 1987)); see also, *e.g.*, *Swyear v. Fare Foods Co.*, 911 F.3d 874, 885 (7th Cir. 2018). A public employee can rebut that presumption only if he or she has a "legitimate expectation of continued employment," and "to show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) (citing *Krecek v. Bd. of Police Comm'rs of La Grange Park*, 646 N.E.2d 1314, 1318 (Ill. App. Ct. 1995)).

Plaintiffs offer two theories in support of a legitimate expectation of continued employment: (1) the Cook County Sheriff's Merit Board Act requires that termination of certain correctional employees be "for cause" and (2) the property interest in continued employment was secured by an understanding in the form of a clearly implied promise. [54 at ¶ 96, 98–99.] The Court considers each in turn.

### 1. Cook County Sheriff's Merit Board Act

An employee can show a legitimate expectation of continued employment established by a "specific ordinance" or "state law." *Moss*, 473 F.3d at 700. Plaintiffs hang their hat on the Cook County Sheriff's Merit Board Act (CCSMBA), 55 ILCS 5/3–7001, *et seq.*, which mandates certain personnel policies and procedures for the CCSO. In relevant part, the Act provides, "Except as is otherwise provided in this Division, no deputy sheriff in the County Police Department, no full-time deputy sheriff not employed as a County police officer or county corrections officer and no employee in the county Department of Corrections shall be removed, demoted or suspended except for cause." 55 ILCS 5/3–7012. Elsewhere, the CCSMBA establishes a Merit Board, which has the power to "establish a classification of ranks including those positions which shall be exempt from merit classification." 55 ILCS 5/3–7006. These provisions must be read in tandem: The Merit Board, pursuant to its powers in section 3–7006, has the authority to classify different position types as within or exempt from section 3–7012's for-cause protections. *Kolman v. Sheahan*, 31 F.3d 429, 434 (7th Cir. 1994) (holding that two chief deputies and five investigators employed by the CCSO did not have a property right in employment because the Merit Board did not classify their positions as merit positions).[5]

Because the CCSMBA itself does not explicitly include or exempt the rank of "Commander" from the for-cause requirement, 55 ILCS 5/3–7012, whether section 3–7012 applies turns on how the Merit Board classifies that rank. See *Kolman*, 31 F.3d at 434. Plaintiffs, however, do not plead that the Merit Board includes Commander as a protected rank; in fact, their pleading suggests that Commander is *not* classified by the Merit Board as a protected rank. See [54 at ¶¶ 11,

---

[5] Defendants advance an alternate theory that section 3–7012 does not apply because it only applies to for-cause termination, and not to layoffs. [60-1 at 5–7.] Because the Court dismisses this Count on alternate grounds, it need not reach the question of whether layoffs are within the ambit of the CCSMBA.

96.][6] In order to forestall the inevitable conclusion that they are not protected by the CCSMBA, Plaintiffs advance two theories for why Commanders should nonetheless be given merit protections under the CCSMBA. First, the Plaintiffs contend that the rank of "Commander" is "nearly identical" to and entails "generally" the same job responsibilities as the (presumably) protected rank of "Correctional Captain." [54 at ¶¶ 10, 42, 96.] That is, this was nothing more than a name change from Captain to Commander. [*Id*. at ¶ 39.] But the Merit Board does not classify job functions, it classifies "*ranks* including those positions which shall be exempt from merit classification." 55 ILCS 5/3–7006 (emphasis added); *Kolman*, 31 F.3d at 434. Because Plaintiffs do not contend that the rank of Commander is included within the merit system, they fail to show how the CCSMBA provides a legitimate expectation of continued employment.[7] Moreover, the fact that the Plaintiffs were fired *six years* after the creation of the Commander rank suggests that the Merit Board consciously excepted it from merit protections. The inference that Plaintiffs would have the Court draw, that the Merit Board was asleep at the wheel for the better part of a decade, is simply not tenable. See *Iqbal*, 556 U.S. at 678.

---

[6] Defendants included the most recent Cook County Sheriff's Merit Board Rules and Regulations as an attachment to their reply brief. See generally [68-1]. This document, however, is dated four months after the layoffs occurred, so the Court cannot rely on it in analyzing Plaintiffs' merit status as of December 2017. But, had these rules been in effect in December 2017, they would preclude Plaintiffs' allegation that they were covered by the Merit Board: Article IV of these rules categorically "exempt[s] from merit classification" any "[i]ndividuals serving in positions outside" the classified ranks of Correctional Captain, Lieutenant, Sergeant, and Officer. [*Id*. at 9.] Because the position of Commander was not listed in Article IV, it would be "exempt from merit classification." [*Id*.]

[7] On April 4, 2019, Plaintiffs submitted supplemental authority on this question. See [73]. The case in question, however, involved a former CCSO employee who had been discharged from his position of *Lieutenant*, which is a rank that is protected by section 3–7012 according to the Merit Board classifications. See generally [73–1 (*Jones v. Dart*, No. 2018 CH 03589 (Cook Cty. Chanc. Ct. March. 27, 2019))]. In contrast, Plaintiffs here do not allege that the position of Commander is protected by the Merit Board— rather, they say that their job duties are similar enough to Correctional Captain that they should be protected as well. The Circuit Court's opinion in *Jones* says nothing about this issue.

Plaintiffs' next argument is difficult to parse, but as the Court understands it, Plaintiffs contend that they retain their last "hard rank"—and that "hard ranks" can be different from their formal job titles. [54 at ¶¶ 40–41, 97.] That is, although Plaintiffs' rank "changed" from "Captain" or "Lieutenant" to "Commander," they still retained their last hard rank, which is apparently the Merit Board recognized position of Lieutenant. See [*Id*. at ¶¶ 41, 97.] Preliminarily, Plaintiffs repeatedly plead that "commander" is a "sworn hard rank," so the Court is at a loss as to how the Plaintiffs' "hard rank" is not simply Commander, which would put them outside of the CCSMBA system. [*Id*. at ¶¶ 24–29, 96.] Even taking Plaintiffs' contention that their last hard rank was Captain or Lieutenant as true, however, this creative pleading goes against the statutory text and the holding in *Kolman*. The CCSMBA says nothing about ranks vesting and Plaintiffs do not plead that they are in fact classified in a rank protected by the Merit Board—they are all by their own admission Commanders, not Lieutenants. See [54 at ¶ 41.] Because the CCSMBA only protects the ranks identified by the Merit Board, *Kolman*, 31 F.3d at 434, and the Merit Board does not recognize the rank of Commander, the CCSMBA does not apply to Plaintiffs and cannot provide a legitimate expectation of continued employment.[8]

### 2. Clearly implied promise

"[E]mployment relationships in Illinois are presumed to be at will." *Cromwell*, 713 F.3d at 364 (citing *Duldulao*, 505 N.E.2d at 317). Non-statutory and non-contractual promises may, in some circumstances, rebut that presumption. There is not a consistent formulation of the test, but some courts find a property interest in employment if there is a "clearly implied promise of continued employment." *Bruce v. Bd. of Educ. of the City of Chicago*, 2011 WL 3895125, at *4

---

[8] Again, Plaintiffs' citation to supplemental authority is unavailing. See [73]. The plaintiff in *Jones* pled that his most recent promotion was *into* the protected position of Lieutenant. [*Id*. at 1] Nothing in *Jones* indicates that people who have moved *out of* the rank system retain the protections of the CCSMBA.

(N.D. Ill. Aug. 31, 2011) (quoting *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993)). Others find that the "terms of employment must provide that termination will only be for cause or otherwise evince mutually explicit understandings of continued employment." *Cromwell*, 713 F.3d at 364 (internal quotation marks and citation omitted). In any event, the precise formulation of the test does not matter, because Illinois law requires clear promises of continued employment to rebut the presumption of at will employment, and thereby establish a property right in continued employment.

Plaintiffs claim that there were two clearly implied promises of continued employment establishing a property right. First, plaintiffs contend that the existence of a probationary period implies that upon successful completion of that period, employees can only be terminated for cause: "By how well-established it is that probationary police officers do not have protected property interests, it follows that non-probationary sworn officers * * * have protected property interests by virtue of completing their probationary periods." [67 at 6]; see also [54 at ¶ 98.] Second, such as the Court can glean from the TAC and briefing, Plaintiffs argue under similar logic that being subject to progressive discipline implies a legitimate expectation in continued employment absent committing infractions that would give rise to discipline. See [67 at 5–6]; see also [54 at ¶ 99].

Both arguments are unconvincing. The Seventh Circuit has explained that under Illinois law, "[t]he mere presence of a probationary period does not by implication create an enforceable property right to continued employment for nonprobationary employees." *Cromwell*, 713 F.3d at 364. Indeed, successful completion only secures a property right when the terms of the probationary period are "coupled with other language suggesting an expectation of continued employment." *Id*. at 365 (discussing leading cases). Plaintiffs do not cite any authority to the

contrary. [67 at 6.] Because Plaintiffs did not plead any "other language suggesting an expectation of continued employment," they have not shown that their probationary period implied a promise of continued employment. Plaintiffs' arguments regarding progressive discipline fail for similar reasons. "Without any contractual language or implied promise limiting the employer's power to fire," enumerated grounds for discipline are "gratuitous warnings." *Cromwell*, 713 F.3d at 365 (quoting *Border v. City of Crystal Lake*, 75 F.3d 270, 276 (7th Cir. 1996)); see also *Villacci v. Herrell*, 2014 WL 7205562, at *7 (N.D. Ill. Dec. 18, 2014) (collecting cases); *Catinella v. Cnty. of Cook*, 230 F. Supp. 3d 880, 886 (2016) (granting motion to dismiss because an "unadorned reference to progressive discipline" is not "sufficient to state a protected property interest" in continued employment). As noted above, Plaintiffs have not pled any additional implied promise of continued employment beyond the "gratuitous warnings" embodied by the system of progressive discipline, or cited any authority suggesting that progressive discipline confers a property right in employment. [67 at 6–7.] Because Plaintiffs do not have a legitimate expectation in continued employment, they do not have any constitutionally protected property interest and Count III must be dismissed.[9]

### B. Count IV (Equal protection)

Plaintiffs' Count IV alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment in singling Plaintiffs out for termination. See U.S. Const. amend. XIV § 1. Equal protection claims arise when a state actor "treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a 'fundamental right,' or because the person is a member of a group that is the target of irrational government discrimination." *Abcarian v.*

---

[9] If there was no implied promise then, *a fortiori*, there can be no "mutually explicit understanding," so Plaintiffs fail both formulations of this test. *Cromwell*, 713 F.3d at 364.

*McDonald*, 617 F.3d 931, 938 (7th Cir. 2010). In limited circumstances, the Supreme Court has recognized so-called "class-of-one" claims, "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curium). Class-of-one claims generally only arise when, "with no conceivable basis for his action other than spite or some other improper motive[,] * * * [a public official] comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005).

Defendants have moved to dismiss this Count on the grounds that class-of-one claims can *never* be brought against public employers, and that Plaintiffs have failed to plausibly plead either of the elements of such a claim: (1) that similarly situated individuals were treated differently, or (2) that Defendants acted without any rational basis. [60-1 at 8–10.]

Defendants have the better argument. The law is clear that "a 'class-of-one' theory of equal protection has no place in the public employment context" even when the plaintiff alleges that the employment action was taken for "arbitrary, vindictive, or malicious reasons." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 594–95; see also, *e.g.*, *Forgue*, 873 F.3d at 968 (holding that public employee plaintiff's equal protection "theory of liability is categorically foreclosed by the Supreme Court's holding in *Engquist*"); *Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010) ("[D]isputes related to a public employee's interactions with superiors or co-workers *never* may be litigated as class-of-one claims under the equal protection clause."). Plaintiffs themselves concede that the Seventh Circuit interprets *Enquist* as imposing a "broad" immunity on public employers from class-of-one claims. [67 at 8] (quoting *Abcarian*, 617 F.3d at 939). This categorical policy is guided by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." *Engquist*, 553 U.S. at 607 (quoting *Connick*

*v. Myers*, 461 U.S. 138, 143 (1983)).  Indeed, "[t]o treat employees different is not to classify them in a way that raises equal protection concerns," but rather, "it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."  *Id.* at 605.  Because Plaintiffs' theory amounts to little more than the claim that their public employer singled them out for disparate treatment, it must be dismissed under *Engquist* as an improper class-of-one claim.

Plaintiffs' discussion of an out-of-circuit race discrimination case is unpersuasive.  [67 at 7–8 (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d. Cir. 2015)).]  In *Vega*, the plaintiff alleged that his public employer discriminated against him because he is Hispanic, and then retaliated against him when he filed charges with the Equal Employment Opportunity Commission.  801 F.3d at 76–78.  *Vega* did not cite *Engquist* or even discuss class-of-one equal protection claims because the retaliation at issue was part of the same underlying race-based discrimination, a clear-cut equal protection violation.  *Id.* at 82.  *Vega* is thus inapposite, because Plaintiffs have not alleged that they were fired in retaliation for bringing workplace discrimination against suspect classes to light, let alone that they are members of a suspect class.[10]  And to the extent that Plaintiffs cite *Vega* for the proposition that *Engquist* does not apply to public employers' retaliation against employees, the Court is bound by Seventh Circuit precedent to the contrary.  See, *e.g.*, *Forgue*, 873 F.3d at 968.

In any event, Plaintiffs have also failed to make out either of the elements of a proper class-of-one equal protection claim: that they have been "[1] intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment."  *Id.*  First,

---

[10] Plaintiffs' alternative proposed class of people "seeking to unionize and that [] were whistle-blowers" [67 at 7] is not a suspect class within equal protection jurisprudence.  See, *e.g.*, *Abcarian*, 617 F.3d at 938 (listing the traditionally recognized protected classes).  Moreover, recognizing such a class would turn *Engquist*'s categorical ban on public employment class-of-one claims into a mere formality to be overcome by cleverly specific pleading.

Plaintiffs have not plausibly pled that they were treated worse than other similarly situated individuals. Plaintiffs' proposed similarly situated comparators, "Directors," fails because Plaintiffs have not pled facts showing that "Directors" are "*prima facie* identical in all relevant respects" to Commanders. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)). Plaintiffs concede that "the entire rank" of Commander was terminated, meaning that no one with that rank was treated differently than Plaintiffs. [54 at ¶ 120(b).] And, obviously, rank is highly "relevant" to personnel procedures in the CCSO. See, *supra*, III.A.1. Plaintiffs alternately assert that *all* CSSO employees are similarly situated because they are all "employees who cost the Sheriff money." [67 at 8.] This is obviously overbroad, which is why *Engquist* precludes class-of-one claims that rest "on the theory that other employees were not treated wrongfully." *Engquist*, 553 U.S. 608.

Plaintiffs have also failed to rebut the "presumption of rationality" that attaches to government actions challenged in class-of-one claims. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 548 (7th Cir. 2008). "[E]ven at the pleading stage a class-of-one plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis." *Jackson v. Vill. of W. Springs*, 612 Fed.Appx. 842, 847 (7th Cir. 2015) (quoting *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2014)). If the Court "can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no." *Fares Pawn v. Indiana Dep't of Fin. Inst.*, 755 F.3d 839, 845 (7th Cir. 2014). Here, Plaintiffs have failed to rebut the purported justification for the layoffs—Cook County's budget crisis. Moreover, the Court can conceive of many rational bases for singling out the Commanders. For example, it may be administratively easier to eliminate a stratum of middle management that consists of only six people than to reorganize larger departments. Or perhaps firing employees not covered by the CCSMBA is

simply less of an administrative headache. Because *Engquist* bars class-of-one claims by public employees and Plaintiffs have failed to plead either of the required elements of such a claim, the Court must dismiss Count IV.

### C. Count V (Monell)

Next, Plaintiffs bring a *Monell* claim against Defendant Dart in his official capacity as Sheriff of the CCSO. Preliminarily, *Monell* is a theory of municipal or agency liability for actions brought under 42 USC § 1983. See generally *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Because the Court has dismissed Count III and Count IV, the *Monell* analogues must be dismissed as well. Counts I and II have not been dismissed, however, and allege constitutional violations pursuant to 42 USC § 1983, so the Court must still determine whether *Monell* liability applies.

To state a claim under *Monell*, a plaintiff must plead that his or her constitutional injury was caused by one of the following: "(1) the enforcement of an express policy of the [agency], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *E.g.*, *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (citations omitted). Here, Plaintiffs try to plead all three theories. ¶¶ 118, 120–21.

In reviewing the Plaintiffs' *Monell* claim, the Court is mindful of Seventh Circuit's admonition "that federal courts may not apply a heightened pleading standard * * * in civil rights cases alleging municipal liability under . . . 42 USC § 1983." *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (internal quotation marks and citation omitted). Thus, as in all civil cases, Plaintiffs here need only abide by Rule 8(a)(2)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id*.

Defendant Dart challenges each of the three ground for *Monell* liability as insufficiently specific to survive a motion to dismiss. He argues that "the First Amendment claims based on policies, practices, and final policymakers fail because they are nothing more than conclusory and threadbare recitations of the elements of *Monell* claims." [60-1 at 11.] Specifically, he contends that (1) Plaintiffs' allegations regarding "express policy" are insufficient; (2) Plaintiffs have not sufficiently pled that Defendant Dart is a final policymaker; and (3) Plaintiffs have not properly alleged an unconstitutional custom and practice. Each theory is addressed in turn.

First, Plaintiffs' allegations of an express policy that violates the Constitution is insufficient to make out a *Monell* claim. "The express policy theory applies * * * where a policy *explicitly* violates a constitutional right when enforced." *Calhoun v. Ramsey*, 408 F.3d at 375 (7th Cir. 2005) (emphasis added). Plaintiffs' TAC does not allege that there is any express policy that *explicitly* violates a constitutional right. Rather, according to Plaintiffs, Sheriff Dart utilized his powers under "SEAM, Article S" to "select Plaintiffs for layoff." See, *e.g.*, [54 at ¶ 84]; see also [*id*. at ¶ 119]. As the Court understands these allegations, they merely state that SEAM, Article S provided Defendant Dart with expansive or discretionary powers that he nefariously used to retaliate against Plaintiffs. See [67 at 10.] Even accepting as true Plaintiff's allegation that SEAM was enacted solely to provide a mechanism to fire Plaintiffs [54 at ¶ 84], Plaintiffs have still not pled that SEAM, Article S "explicitly violates a constitutional right when enforced." *Calhoun*, 408 F.3d at 375. Indeed, Plaintiffs' express policy theory contains little more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Plaintiffs' allegation that Sheriff Dart was a final policymaker, however, fares better. "The determination of whether a person has policymaking authority is a question of state law." *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (citation omitted). "In

order to have final policymaking authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 401 (7th Cir. 1992)).  The Seventh Circuit has explained that "a sheriff in Illinois has final policy-making authority" for *Monell* purposes.  *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1013 (7th Cir. 2000) (internal omitted) (holding that an allegation that a county sheriff caused constitutional harm is sufficient to make out a *Monell* claim).  Here, Plaintiffs have pled that Defendant Dart "passed and enforced SEAM, Article S," and that this policy provided the mechanisms for laying off employees.  [54 at ¶¶ 70, 73, 119].  That is, Defendant Dart has "set" the SEAM policy, thereby adopting "rules for the conduct of government" regarding employee termination in the CCSO.  See *Rasche*, 336 F.3d at 599.  Plaintiffs also have pled that Defendant Dart caused their injury while acting pursuant to his policymaking authority when he selected Plaintiffs for termination and then ultimately approved of their dismissal.  [54 at ¶¶ 68, 74.]  These allegations, along with the fact that "a sheriff in Illinois has final policy-making authority," *Brokaw*, 235 F.3d at 1013, are sufficient to allow the Court to infer that Defendant Dart is a final policymaker with respect to firing and that he caused Plaintiffs' injury.

Third, because Plaintiffs have adequately alleged that Defendant Dart is a final policymaker for the CCSO and caused Plaintiffs' injuries, the Court need not address Plaintiff's allegations that Defendant Dart has implemented a widespread custom or practice of retaliation. Plaintiffs' Count V can proceed.  However, as a matter of prudent case management, the Court will discuss with counsel at the next status hearing whether the *Monell* claim (Count V) should be bifurcated.

### D. Illinois Tort Immunity[11]

Plaintiffs also bring two counts under state tort law, Count VI (Illinois Whistleblower Act) and Count VII (common-law retaliatory discharge). Defendants move to dismiss both of these counts claiming that they are immune from suit. [60-1 at 14–16]; see generally Illinois Tort Immunity Act, 745 ILCS 10/2–101 *et seq.* (TIA). In relevant part, the TIA provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2–201. Defendants claim that this statute provides absolute immunity against both state-law claims because they are policymakers and firing Plaintiffs was a discretionary policy decision. [60-1 at 14–16.] Plaintiffs counter that their firing was not a policy decision, and thus was not protected by the TIA. [67 at 14–15.] In the alternative, Plaintiffs argue that public employees can never be immunized against a retaliatory discharge suit and that the TIA does not provide immunity for violations of the IWA. [*Id.* at 12–14.]

Section 2–201 of the TIA has two prongs. First, a public employee must hold "*either* a position involving the determination of policy *or* a position involving the exercise of discretion." *Harinek v. 161 North Clark St. Ltd.*, 692 N.E.2d 1177, 1181 (Ill. 1998); 745 ILCS 10/2–201. Second, the public employee's act or omission giving rise to litigation "must be *both* a determination of policy *and* an exercise in discretion." *Id.* (emphasis added); 745 ILCS 10/2–201. Discretion is defined in contra-distinction to ministerial functions: "[D]iscretionary acts are those which are *unique to a particular public office*, while ministerial acts are those which a person

---

[11] Because the Court concludes that Defendants are immune from the state law tort actions, it is not necessary to address the adequacy of the TAC with regard to Counts VI and VII, IWA and retaliatory discharge, respectively.

performs on a given state of facts in a *prescribed manner, in obedience to the mandate of legal authority*, and without reference to the official's discretion as to the propriety of the act." *Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 281 (Ill. 2003) (quoting *Snyder v. Curran Twp.*, 657 N.E.2d 988, 993 (Ill. 1995)). Policy decisions are "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Harinek*, 692 N.E.2d at 1181 (quoting *West v. Kirkham*, 588 N.E.2d 1104, 1109 (Ill. 1992)).[12]

Illinois courts are unwilling to read exceptions into section 2–201 of the TIA. For example, public employees are immunized for "willful and wanton" misconduct, absent explicit statutory language to the contrary. *Barnett v. Zion Park Dist.*, 665 N.E.2d 808, 813–814 (Ill. 1996). Similarly, Illinois courts refuse to "recognize an exception for conduct inspired by 'corrupt and malicious motives.'" *Vill. of Bloomingdale v. CGD Enters., Inc.*, 752 N.E.2d 1090, 1097–98 (Ill. 2001). Indeed, "[s]ection 2–201 of the Act offers the most significant protection afforded to public employees under the Act." *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236 (Ill. 2008).

As far as the Court can tell, Plaintiffs do not contest that each Defendant holds a position "involving the determination of policy or * * * the exercise of discretion." Plaintiffs' own pleadings identify each Defendant as "a final policymaker and decisionmaker for the CCSO." [54 at ¶¶ 30–31, 33–35.] Likewise, Plaintiffs do not appear to contest that the act or omission giving rise to this litigation—firing the Plaintiffs—was discretionary. [*Id*. at ¶¶ 68–69 (pleading that the Defendants "selected" the Plaintiffs for firing).] Nor could they under their theory that Defendants singled them out for termination. See *Van Meter*, 799 N.E.2d at 281.

---

[12] The Court notes that the definition of policymaking under the TIA is different from that used to determine *Monell* liability.

Regardless, under Illinois law, "[m]unicipal decisions regarding the hiring, firing, discipline, and supervision of employees are discretionary policy decisions." *Graham v. Bd. of Educ. of City of Chicago*, 2019 WL 215098, at *6 (N.D. Ill. Jan. 16, 2019) (collecting cases); see also, *e.g.*, *Brooks v. Daley*, 29 N.E.3d 1108, 1116–17, (Ill. App. Ct. 2015) (reviewing cases and concluding that defendants made policy decision when forcing plaintiff to resign even if defendants "acted with corrupt and malicious motives"); *Ellis v. City of Chicago*, 272 F. Supp. 2d 729, 735 (N.D. Ill. 2003) ("the decision to fire someone involves balancing a set of given circumstances"); *Zinnermon v. City of Chicago Dept. of Police*, 209 F. Supp. 2d 908, 911 (N.D. Ill. 2002) (dismissing complaint because defendants made policy decision in firing plaintiff for reporting police brutality and were thus immune from suit).[13]

In the case at bar, Plaintiffs do not—and cannot—plausibly plead that their discharge should not be treated as a discretionary policy decision. First, the overwhelming weight of authority supports the conclusion that under Illinois law, the decision to fire an employee is a discretionary policy decision even if inspired by corrupt or malicious motives. *Graham*, 2019 WL 215098 at *6; *Brooks*, 29 N.E.3d at 1117. Indeed, the decision to lay off "an entire rank" necessarily entails "balancing competing interests," including how the CCSO would staff the jail after losing such experienced personnel. See [54 at ¶¶ 2, 3, 5.] This conclusion is buttressed by the fact that Plaintiffs were fired four years after they started the unionization campaign and began complaining about jail conditions. Second, even assuming that the layoffs were motived entirely

---

[13] To be sure, some courts have recognized narrow exceptions to this rule of thumb. In *Valentino v. Village of South Chicago Heights*, the Seventh Circuit refused to extend TIA immunity to a former employer based on a "one-time decision to fire one employee." 575 F.3d at 679. According to the court, the stated reason for firing that employee, that she had photo-copied time sheets, does not "involve competing interests and judgment calls that would meet the Illinois courts' definition of a 'policy decision.'" *Id.* (citing *Van Meter*, 799 N.E.2d at 281). In a similar vein, when a plaintiff alleged that his superiors cooked up a departmental reorganization to provide a pretext to eliminate his position, the question of immunity survived a motion for summary judgment. *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 885–86 (N.D. Ill. 2015).

by retaliatory malice, the TIA still protects malicious firing as a discretionary policy decision. *Brooks*, 29 N.E.3d at 1117; *Bloomingdale*, 752 N.E.2d at 1097–98. Finally, even if the exceptions in *Valentino* and *Weiler* are consistent with *Brooks* and *Bloomingdale*, Plaintiffs do not allege that their termination was a "one-time decision to fire one employee," as in *Valentino*. As Plaintiffs' TAC notes, Defendants not only "terminated an entire rank," [54 at ¶ 120(b)] but did so as part of a larger reorganization that involved transfers, demotions, and pay cuts for other employees. [*Id.* at ¶¶ 18, 57, 63.] Plaintiffs' termination was thus part of a larger set of policy moves that unquestionably required Defendants to "balance competing interests." *Harinek*, 692 N.E.2d at 1181. Likewise, the case at bar is a far cry from *Weiler*, where the plaintiff alleged that a departmental reorganization was entirely motivated by the desire to provide a pretext for eliminating his position. Here, Plaintiffs concede that the termination of their employment was part of the CCSO's broader response to the fiscal crisis, and that the CCSO's response to its budget deficits was not entirely pretextual. [67 at 5 n.1.] As noted above, the timing of Plaintiffs' discharge, years after motive allegedly arose, also negates any inference that Defendants did not consider any other competing interest.

Plaintiffs' two other arguments to avoid the TIA are also unconvincing. First, Plaintiffs posit that 745 ILCS 10/2–201 is inapplicable in cases of retaliatory discharge, citing the Illinois Supreme Court's decision in *Smith v. Waukegan Park Dist.* [67 at 13.] *Smith*, however, held only that a different statutory section, 2–109, did not apply to retaliatory discharge. 896 N.E.2d at 236–37. Because Defendants move to dismiss under a statutory section not covered by *Smith*'s holding, one that provides more "significant protection" to public employees no less, they are immune from suit. See, *e.g.*, *Vasquez v. Bd. of Educ. for School Dist. U-46*, 2017 WL 1250839, at *4 (N.D. Ill. Apr. 5, 2017) (collecting cases and noting that most allow immunity under non-section 2–109

provisions of the TIA); *Smith*, 896 N.E.2d at 237; but see *Zelman v. Hinsdale Twp. High Sch. Dist. 86*, 2010 WL 4684039, at *2 (N.D. Ill. Nov. 12, 2010) (reading *Smith* broadly as holding "that the Tort Immunity Act did not apply in cases of retaliatory discharge"). In any event, Plaintiff's argument on this front ignores the recent Illinois Appellate Court decision in *Brooks v. Daley*, which held that section 2–201 in fact provided city employees with immunity against retaliatory discharge tort suits. *Brooks*, 29 N.E.3d at 1117. Following that decision and the majority approach taken by the federal courts, the Court concludes that 745 ILCS 10/2–201 applies to retaliatory discharge and Defendants are entitled to immunity.

Second, Plaintiffs' argument that the TIA does not apply to violations of the Illinois Whistleblower Act (IWA) is similarly unconvincing. Plaintiff cites Illinois cases that refuse to grant immunity under the TIA when the employer discharges an employee for seeking relief under the Illinois Workers' Compensation Act, 820 ILSC 305/1 *et seq*. (IWCA). [67 at 13–14 (citing *Smith*, 896 N.E.2d at 237).] This attempt to analogize to the IWCA, however, ignores the plain language of the TIA: The TIA, by its own terms, does not apply to cases arising under the IWCA. 745 ILCS 10/2–101. In contrast, the TIA contains no such provision regarding the IWA, and the IWA does not include any language limiting the applicability of the TIA. See 745 ILCS 10/2–101; 740 ILCS 174/1 *et seq*.; see also *Thompson v. Bd. of Educ. of Chicago*, 2014 WL 1322958, at *7 n.7 (N.D. Ill. Apr. 2, 2014). Furthermore, the Court cannot disregard the Illinois courts' refusal to read additional exceptions into their immunity laws. See *Barnett*, 665 N.E.2d at 813–814 (refusing to recognize exception for "willful and wanton" conduct); *Bloomingdale*, 752 N.E.2d at 1097–98 (refusing to recognize exception for actions taken with "corrupt and malicious motives"). As other courts have concluded, "'[t]hough it seems anomalous that public employees would have immunity from actions taken against whistleblowers, that is the result dictated by the

plain language of the Tort Immunity and Whistleblower Acts.'" *Weiler*, 86 F. Supp. 3d at 886 (quoting *Thompson*, 2014 WL 1322958 at *7 n.7). Counts VI and VII must accordingly be dismissed because the Defendants are immune from Illinois tort suits stemming from firing decisions.

**IV. Conclusion**

For the reasons state above, Defendants' motion to dismiss [62] is granted in part and denied in part. This case is set for further status hearing on October 3, 2019 at 9:00 a.m.

Dated: September 17, 2019
                                                
Robert M. Dow, Jr.
United States District Judge