**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Carmen Consolino, *et al.*,

        Plaintiffs,

    v.

Thomas J. Dart, *et al.*,

        Defendants.

Case No. 17 C 9011

Judge Jorge L. Alonso

## <u>Memorandum Opinion and Order</u>

Pending before the Court are Defendants' motion for summary judgment (ECF No. 144), Plaintiffs' motion for leave to file a sur-reply in opposition to Defendants' motion for summary judgment (ECF No. 168), and Plaintiffs' motion to reconsider the Court's prior ruling dismissing Count III of their Third Amended Complaint (ECF No. 170). For the reasons below, the Court grants Plaintiffs' motion for leave to file a sur-reply, grants Defendants' motion for summary judgment and dismisses Plaintiffs' claims, and denies Plaintiffs' motion for reconsideration.

## Background[1]

Plaintiffs Antonio Belk, Victor Thomas, Cynthia Chubb, Carmen Consolino, Andres Garcia, and Aretha Germany are former Correctional Officers in the Cook County Department of Corrections ("DOC"), who ultimately reached the rank of DOC Commander by 2012. (DSOF ¶¶ 1–6.)

---

[1] This background is taken from the statements and responses the parties have submitted under this District's Local Rule 56.1. The Court refers to Defendants' statement of facts (ECF No. 145) as "DSOF" and refers to Plaintiffs' response and statement of additional facts (ECF No. 157) as "Pls. Resp." and "PSOF," respectfully. The Court refers to Defendants' response to Plaintiffs' statement of additional facts (ECF No. 167) as "Defs. Resp." Unless otherwise noted, these facts are either undisputed or presented from Plaintiffs' point of view as the non-moving party.

Plaintiffs were involved in varying capacities in efforts by DOC commanders to unionize beginning in 2013 and 2014. (*See* PSOF ¶¶ 1–6.) On August 2, 2017, an administrative law judge of the Illinois Labor Relations Board ("ILRB") issued a Recommended Decision and Order ("RDO"), recommending that the rank of commander be granted the petitioned-for bargaining unit. (PSOF Ex. CC, ECF No. 157-38 at 32.) The Cook County Sheriff's Office's ("CCSO's") position was to oppose unionization by any level of management, including commanders, though over 90 percent of CCSO staff was unionized. (PSOF ¶ 21; Defs. Resp. ¶ 21.) In February 2018, the full ILRB rejected the RDO as a matter of law and dismissed the commanders' unionization petition, finding that the commanders were ineligible supervisors under the Illinois Public Labor Relations Act. (Defs. Resp. Ex. 1, ECF No. 167 at Plaintiff 005288.)

During the commanders' unionization efforts, certain individuals at CCSO—most of whom were not involved in the later conduct relevant to this case—made negative comments about unions or collective-bargaining agreements. (PSOF ¶¶ 26–27; Defs. Resp. ¶¶ 26–27.) For example, in 2015, Defendant Nneka Jones Tapia, the Executive Director of the DOC, separately (1) said that the commanders "have the audacity to want a union" and (2) called the Teamsters union "ignorant" and "disrespectful" and did not want them to attend a meeting related to manpower or staffing. (PSOF ¶¶ 25, 28, Ex. D at 68:4–69:16; Defs. Resp. ¶¶ 25, 28.) Assistant Executive Director Michael Miller stated in October 2016, "you Commanders are a bunch of lazy [expletive], and now you are trying to get a union too." (PSOF ¶ 27.) And Assistant Executive Director Mario Reyes stated in 2017 that "higher-ups" at CCSO were upset with the RDO and that the RDO meant that CCSO would have to "deal with another" collective-bargaining agreement and would not be able to control the Commanders. (*Id.* ¶ 25.)

On November 10, 2016, the Cook County Board of Commissioners voted to adopt the Cook County Sweetened Beverage Tax Ordinance (the "Soda Tax"). (DSOF ¶ 16.) Based in part on the revenue derived from the Soda Tax, Cook County provided the Cook County Sheriff's Office ("CCSO") with a budget target of $625 million for Fiscal Year 2018 ("FY2018"). (*Id.* ¶ 17.) The CCSO's FY2018 request was at that time $50 million over that budget target. (*Id.*)

On July 3, 2017, Cook County Budget Director Tanya Anthony notified the CCSO that a temporary restraining order had issued preventing collection of the Soda Tax, resulting in a projected shortfall of $67 million for FY 2017 and a holdback for the remaining of FY2017, which would affect the FY2018 as well. (*Id.* ¶ 18.) The County also provided CCSO with a suggested reduction plan calling for the layoff of hundreds of CCSO employees including twelve Correctional Commanders. (*Id.*) In June and early July 2017, the County told the CCSO they would have to make cuts to the FY2017 budget given the potential Soda Tax repeal. (*Id.* ¶ 19.)

In July 2017, the County notified the CCSO that the possible repeal of the Soda Tax would result in the CCSO budget being reduced from $625 million to $553 million for FY2018, and Defendant Undersheriff Zelda Whittler asked Helen Burke (the Chief Legal Officer for the CCSO, supervised by Undersheriff Whittler) to put together a team to help manage the required cuts. (*Id.* ¶¶ 20–21.) The resulting team included Undersheriff Whittler, Jill McArdle (CCSO's budget director), Tim Kinsella (McArdle's budget assistant), and Jennifer Black (liaison with the operational and administrative departments). (*Id.* ¶ 22.)

On October 11, 2017, the Cook County Board of Commissioners voted to repeal the Soda Tax. (*Id.* ¶ 23.) On October 25, 2017, the CCSO held a budget hearing, during which multiple commissioners questioned Defendant Sheriff Thomas Dart about the layers of supervision within the DOC. (*Id.* ¶ 24.) Two days later, the CCSO received a letter from County Commissioner John

Daley, requiring an updated CCSO FY2018 budget that was reduced by ten percent ($62.5 million), which Ms. Burke's team began working on. (*Id.* ¶ 25.)

In Fall 2017, CCSO Chief of Operations Jeff Johnsen sent an email to the commanders, lauding their experience, knowledge, and leadership, and stating that he would rest easy knowing that the compound's operations are in their capable hands. (PSOF ¶ 39.) But on October 20, 2017, Ms. Burke wrote to Defendant Matthew Burke (the DOC Chief of Staff) and others to ask if they could look at the savings and operational issues that would result from eliminating commanders. (DSOF ¶¶ 11, 28.)[2] When CCSO layoffs became a possibility, Undersheriff Whittler did not identify specific positions to eliminate, but rather directed the various bureau chiefs, including Defendant Chief Bradley Curry (CCSO's Chief Operating Officer), and department heads to discuss with their managers what their operational needs were to determine what positions could be eliminated without adverse impact, if needed—and explained that if the bureau chiefs did not identify positions to eliminate, the County Board would eliminate positions. (*Id.* ¶¶ 29, 31.) Curry and the CCSO solicited and considered the feasibility of various options to cut the CCSO's budget, including eliminating the Commander position altogether, moving commanders back to the lieutenant rank, or converting or reassigning some commanders—with Chief Curry to ultimately decide what to do operationally. (*See* PSOF ¶¶ 31, 35; Defs. Resp. ¶¶ 31, 35; *see also* DSOF ¶¶ 33–36; Pls. Resp. ¶¶ 33–36.[3])

---

[2] Plaintiffs claim that the ultimate budgetary cuts were pretextual but do not dispute these facts themselves.

[3] Plaintiffs summarily object to several of Defendants' factual statements as "argumentative," even though Defendants provide record support for the statements. The Court overrules those objections. Regardless, the undisputed takeaway is that numerous proposals were made to address CCSO and DOC's budget issues—several of which were rejected by the County, and Plaintiffs themselves point to evidence that "the County wanted bodies," rather than other cost-saving measures, to meet the FY2018 budget. (*See* Pls. Resp. ¶ 33.)

Following consultation with Director Jones Tapia (whom he supervised), Chief Johnsen, Director Miller, Matthew Burke, Helen Burke, and others, Chief Curry decided to eliminate the Commander position. (DSOF ¶¶ 37–38; Pls. Resp. ¶ 38; PSOF ¶ 37.) According to Chief Curry, he and others did not want to lay off commanders but felt they had to do so under the circumstances.[4] (Pls. Resp. ¶ 46; *see also* DSOF ¶ 46; Pls. Resp. ¶ 46.) CCSO's final budget was agreed to on November 21, 2017. (DSOF ¶ 27.) All commanders, including Plaintiffs, were terminated[5] in November 2017 with an effective date of December 4, 2017. (*Id.* ¶ 47.) Karyn Williams, Executive Director of the Sheriff's Human Resources Office as of 2016, was not consulted for the decision to terminate the commanders and expressed concern that Human Resources had not been involved in the decisionmaking process. (PSOF ¶ 44.)[6] In 2017, CCSO Superintendent Joseph Brown, who had testified at the ILRB hearing on the CCSO's behalf, was the only superintendent who was laid off. (*Id.* ¶ 48; Defs. Resp. ¶ 48.) Several CCSO non-commander employees were demoted and received pay cuts in lieu of being laid off. (PSOF ¶ 40.)

Notwithstanding the CCSO's budget issues and termination of all DOC commanders, the CCSO hired 12 employees across all departments between September and December 2017 and

---

[4] Curry testified that CCSO "didn't have a lot of time, we didn't have a lot of options," including due to collective-bargaining agreements with certain ranks. (PSOF ¶ 31; Defs. Resp. ¶ 31.)

[5] Defendants refer to the elimination of Plaintiffs and the other commanders as "layoffs" rather than terminations. The Court adopts Plaintiffs' characterization of these eliminations as terminations for purposes of its analysis.

[6] Plaintiffs also cite as evidence various allegations from Williams' verified state-court counterclaim in her separate action against the Sheriff's Office claiming political favoritism during the budget cuts. (*See* PSOF ¶ 18.) However, these allegations are not evidence. *See* 735 ILCS 5/2-605 ("Verified allegations do not constitute evidence except by way of admission."). They also are related to Williams' separate allegations against the Sheriff's Office and not to Plaintiffs' allegations of retaliation related to the firing of the commanders. Williams' verified allegations therefore are not material to this case.

hired 70 employees in 2018—though none of the new hires appear to have taken over the terminated commanders' duties. (*Id.* ¶ 42; *see also* Defs. Resp. ¶ 42.)[7]

The Sheriff's Employment Action Manual ("SEAM") contains a set of employment-related articles that the CCSO must adhere to. (DSOF ¶ 49; Pls. Resp. ¶ 49.) Around the time Ms. Burke learned of potential issues with the Soda Tax, she prioritized revising SEAM Article S related to layoffs of nonunion employees to ease those procedures—which made it easier to fire commanders—and SEAM Article S was ultimately revised approximately a month before Plaintiffs' termination. (*See* DSOF ¶¶ 50, 52; Pls. Resp. ¶¶ 50, 52, 54; PSOF ¶¶ 16–17; *see also* Defs. Resp. ¶¶ 16–17.) By its terms, SEAM could be modified by the CCSO at any time.[8] (DSOF ¶ 51; *see also* Pls. Resp. ¶ 51.)

On December 15, 2017, Plaintiffs filed the instant action in this Court. (ECF No. 1.) Their operative complaint brought the following pending counts against Defendants: retaliation for Plaintiffs' protected First Amendment speech and activities (their unionization efforts) under 42 U.S.C. § 1983 against the individual Defendants (Counts I and II); a related *Monell* liability claim against the CCSO (Count V); and a related indemnification claim against Cook County (Count VIII). (Third. Am. Compl., ECF No. 54; *see also* Sept. 19, 2019 Mem. Op. & Order, ECF No. 77 (dismissing other counts).) Among the counts that the Court dismissed in its September 17, 2019 ruling was Count III against the individual Defendants, alleging a deprivation of their Fourteenth Amendment due process rights related to purported procedural protections granted to

---

[7] The Court considers this evidence over Defendants' admissibility objections. (*See* Defs. Resp. ¶ 42.)

[8] Plaintiffs clarify that the CCSO was not allowed to modify SEAM to retaliate for the Plaintiffs' attempts to unionize—this is uncontroversial and is not a factual dispute.

them under the Cook County Sheriff's Merit Board Act, 55 ILCS 3/7001 *et seq.*, which is the subject of plaintiffs' pending motion for reconsideration.

## Legal Standards

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted). "To defeat a motion for summary judgment, the party opposing it must make a 'showing sufficient to establish the existence of [any challenged] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893–94 (7th Cir. 2018) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). The court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

In assessing the evidence at summary judgment, the court must consider the facts in the light most favorable to the non-moving party, giving that party "the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence," regardless of whether it can "vouch for the objective accuracy of all" the evidence the non-moving party puts forward. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014). Even though district courts must view the non-moving party's evidence in this generous light, it does not follow that they are "required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare*, 629 F.3d at 704. "Inferences supported only by speculation or conjecture will not suffice." *Johnson*, 892 F.3d at 894.

## Discussion

### I.   Plaintiffs' Motion for Leave to File a Sur-Reply (ECF No. 168)

As a preliminary matter, Plaintiffs seek leave to file a sur-reply in opposition to Defendants' motion for summary judgment. Whether to grant a motion for leave to file a sur-reply is a matter of the Court's discretion. *Johnny Blastoff, Inc. v. L.A. Rams*, 188 F.3d 427, 439 (7th Cir. 1999). For example, a sur-reply may be appropriate to allow a party the opportunity to respond to new arguments made in a reply brief. *See Univ. Healthsys. Consortium v. UnitedHealth Grp., Inc.*, 68 F. Supp. 3d 917, 922 (N.D. Ill. 2014). Further, the Court's Local Rule 56.1(f) contemplates that a party opposing summary judgment may seek leave to respond to evidentiary objections raised in response to the party's Rule 56.1(c)(1) statement of facts, as is at least partially the case for Plaintiffs here. *See* N.D. Ill. Local R. 56.1(f). The Court concludes that Plaintiffs' sur-reply will assist it in considering the issues before it and therefore grants Plaintiffs' motion for leave to file a sur-reply. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 329

(N.D. Ill. 2005) ("This vouchsafes the aggrieved party's right to be heard and provides the court with the information necessary to make an informed decision.").

However, after claiming that they need a sur-reply to respond to various arguments Defendants purportedly raised in their reply brief, Plaintiffs spend much of their sur-reply simply claiming waiver. That misses the point. Waiver arises because arguments must be raised "so that the [opponent] may address them." *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990). Here, and even assuming Plaintiffs are correct that Defendants raised new arguments in their reply brief, Plaintiffs themselves sought and have now obtained an opportunity to respond to Defendants' allegedly new arguments. But rather than doing so, they use much of their sur-reply to repeatedly claim waiver for various arguments. Because Plaintiffs have used up their own requested opportunity to substantively address Defendants' arguments, the Court finds Plaintiffs' waiver claims unconvincing. *See Malgorzata v. Kijakazi*, No. 20 C 296, 2022 WL 2257122, at *3 (N.D. Ill. June 23, 2022) (finding no waiver partly because the party asserting it "had an opportunity to respond to the issue in the sur-reply and it chose not to"); *CHC Cobrasource, Inc. v. Mangrove Cobrasource, Inc.*, No. 12 C 1832, 2012 WL 1952930, at *1 (N.D. Ill. May 30, 2012) ("Although a party generally waives an argument that it raises for the first time on reply, Cobrasource did not do so here because Defendants had an opportunity to respond to the argument." (citing cases)); *Moorehead v. Deutsche Bank AG*, No. 11 C 106, 2011 WL 4496221, at *5 (N.D. Ill. Sept. 26, 2011) ("The Court eliminated that [waiver] problem when it allowed plaintiffs to file a surreply to address defendants' argument.").

## II. Defendants' Motion for Summary Judgment (ECF No. 144)

Defendants claim they are entitled to summary judgment in their favor on all claims because (1) Plaintiffs cannot make out a *prima facie* case of retaliation, (2) Plaintiffs would have

been fired even if they had not engaged in protected activities, (3) Plaintiffs cannot show that the reasons given for their firings were pretextual, and (4) Defendants are entitled to qualified immunity.[9]

Here, Plaintiffs allege unlawful First Amendment retaliation based on protected activity, which requires them to show: (1) they engaged in activity protected by the First Amendment; (2) they suffered a deprivation that likely would deter First Amendment activity in the future; and (3) the First Amendment activity was "a motivating factor" in the Defendants' decision to take the retaliatory action. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation omitted). If Plaintiffs do so and thus make a *prima facie* showing of retaliation, then the burden shifts to Defendants to produce evidence that they would have fired Plaintiffs even in the absence of their protected activity—that is, that retaliation was not the but-for cause of the firings. *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006). If Defendants meet that burden, then the burden shifts back to Plaintiffs to produce sufficient evidence for a reasonable fact finder to determine that Defendants' reasons "were pretextual and that retaliatory animus was the real reason that the defendants fired them." *Id.*

a. *Prima Facie* **Retaliation**[10]

The parties agree that Plaintiffs' have adequately shown protected activity and a sufficient deprivation.[11] Therefore, the only disputed element is whether Plaintiffs' union-related activities

---

[9] Because Plaintiffs do not survive summary judgment on the merits of their retaliation claims, the Court does not reach Defendants' qualified-immunity defense.

[10] In their opposition briefs, Plaintiffs blend their arguments regarding a *prima facie* case and pretext without clear boundaries. The Court thus considers their arguments as directed to both parts of the analysis, and the Court ultimately concludes that Plaintiffs' cited evidence does not preclude summary judgment for either a *prima facie* case or pretext.

[11] The parties likewise agree that Plaintiffs' comments regarding safety and security are not protected, and that scheduling issues they were subject to while still employed did not amount to constitutional deprivations. The parties dispute whether the RDO constitutes separately protected

were a motivating factor in their firings. For this element, Plaintiffs rely solely on circumstantial evidence, which "may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009) (citation omitted). "If the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate[.]" *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013).

Here, Plaintiffs point to various facts and circumstances in their effort to avoid summary judgment, including:

- the timing between the commanders' favorable RDO on August 2, 2017, and their termination in November 2017;

- Defendants' amendment of SEAM Article S to make firing the DOC commanders easier;

- CCSO's hiring of 12 new employees between September and December 2017 and 70 new employees in 2018, and its choice to demote or cut the pay of certain employees at other ranks as an alternative to termination;

- the exclusion of the CCSO's Human Resources department from the decisionmaking process;

- the CCSO's opposition to the commanders' unionization effort, including its decision to appeal the RDO;

activity—however, this issue is immaterial as the court considers below the timing between either the Plaintiffs' unionization activities or the RDO and Plaintiffs' later terminations, and finds no *prima facie* case of retaliation in either event.

- inconsistent testimony over whether Cook County required the CCSO to implement layoffs to meet its FY2018 budget;

- Superintendent Brown's termination in 2017;

- Jones Tapia's, Miller's, and Reyes' purportedly anti-union comments;

- Chief Curry's failure to adequately consider or pursue alternatives to terminating all DOC commanders; and

- Chief Johnsen's fall 2017 email lauding the commanders.

As explained below, and even taking the facts in Plaintiffs' favor, a reasonable jury could not find a *prima facie* case of retaliation. Summary judgment therefore is appropriate.

Here, Plaintiffs' terminations did not come "close on the heels" of their unionization activity (or of the RDO)—they came years after the activity took place and only after Defendants were presented with a severe budget shortfall. *See Bless v. Cook Cty. Sheriff's Office*, 9 F.4th 565, 572 (7th Cir. 2021) ("Even assuming that [the decisionmakers] were aware of [the plaintiff's] political activity, nothing about this timeline suggests to us that his political activity was a motivating factor . . . because the adverse employment action is too distant from the protected activity[.]"). Even given the issuance of the RDO in August 2017, Plaintiffs' terminations did not happen until months after the decision, and exactly when they would most be expected to happen given the CCSO's undisputed budget challenges. Accordingly, the post-RDO timing here is not enough on its own for a reasonable juror to conclude that Plaintiffs' protected activity was a motivating factor in their terminations, particularly given the significant intervening event of the CCSO's budget challenges. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966–68 (7th Cir. 2012) (affirming summary judgment and finding no inference based on suspicious timing and that the evidence did not show that the alleged retaliation "was based on [] purportedly protected speech;

rather, the decision was based on wholly unrelated, intervening events"). Like in *Kidwell*, "the context in which these [terminations] were taken defies any argument that they were related to" Plaintiffs' unionization efforts, and "it is apparent that significant intervening events . . . that occurred after . . . were the cause" of their terminations." *Id.* at 969.

Plaintiffs' lengthy arguments related to SEAM and its amendments do not move the needle. At most, Defendants' efforts to revise Article S confirm that Defendants wanted to make the termination process easier (specifically for commanders and other non-union employees)—but do not themselves indicate that those efforts were done due to Plaintiffs' protected activity rather than due to the CCSO's budgetary issues. Plaintiffs also do not explain why Human Resources should have been involved in this or any other process related to Plaintiffs' termination, and simply speculate that Williams' exclusion from the decisionmaking process implies malfeasance. *See Morgan*, 724 F.3d at 999 (affirming summary judgment where firing decisions were made "without input from Human Resources").

The CCSO's hiring of other employees across its departments in 2017 and 2018 also does not provide enough support for an inference to avoid summary judgment. Though contemporaneous hiring may sometimes support an inference of retaliation, Plaintiffs do not justify such an inference in this case. *See Jajeh v. Cty. of Cook*, 678 F.3d 560, 572 (7th Cir. 2012) (affirming summary judgment where, though a different employee was moved to full time following the plaintiff's layoff, "Cook County's stated reason for terminating [the plaintiff] was to reduce budget costs" and "the County did in fact reduce budget costs by eliminating [the plaintiff's] position and promoting [the other employee]"); *cf. Huck Store Fixture Co. v. N.L.R.B.*, 327 F.3d 528, 534 (7th Cir. 2003) (finding substantial evidence of unlawful layoffs based on anti-union animus where, among other things, the employer's "business outlook at the

13

time the workforce reduction decision was made was not significantly different from the" positive outlook one month prior, and the employer hired ten permanent employees the day before firing twelve others). Plaintiffs seemingly imply, without explanation, that the CCSO would not have hired *anyone* (within DOC or in other CCSO departments) during FY2018 unless it had retaliated against Plaintiffs, and do not indicate how much of CCSO's savings from firing the commanders was purportedly undone by its 2017 and 2018 hirings to support an inference that Plaintiffs' firings were motivated by retaliation or were pretextual. The fact that CCSO hired some other employees as part of its nine-figure budget in FY2018 notwithstanding its termination of all commanders does not support a reasonable inference that retaliation was a motivating factor for the terminations, or, as explained further below, that Defendants' offered rationale of budget cuts was merely pretextual.

Plaintiffs also have not provided sufficient evidence of anti-union behavior or comments to infer retaliation. The CCSO appeal of the RDO and general opposition to management-level employees like commanders unionizing, as further recounted by Reyes following the RDO, does not support more than speculation that the CCSO then took the additional step of specifically retaliating against Plaintiffs in 2017 for their unionization activities dating as far back as 2013. Jones Tapia's and Miller's isolated comments years earlier likewise do not support a reasonable inference of retaliation in Defendants' (specifically Curry's) decision to terminate Plaintiffs in 2017, and Plaintiffs do not provide material evidence that they were the proximate cause of Plaintiffs' termination. [12] *See Castetter v. Dolgencorp, LLC*, 953 F.3d 994, 997 (7th Cir. 2020) ("[I]solated comments must be contemporaneous with termination or causally related to the

---

[12] The Court also notes that during the decisionmaking process, Jones Tapia herself thought that placing commanders in Correctional Lieutenant positions (which were unionized and did have a collective-bargaining agreement) was operationally feasible. (PSOF ¶¶ 31, 35; Defs. Resp. ¶ 31.)

termination process in order to be probative of discrimination."); *Bahl v. Royal Indem. Co.*, 115

F.3d 1283, 1293 (7th Cir. 1997) ("Such comments cannot defeat summary judgment in favor of

an employer unless they are both proximate and related to the employment decision in question."

(citations omitted)); *Ammons v. Cook Cty. Of Ill.*, No. 11 CV 5010, 2014 WL 4116956, at *10

(N.D. Ill. Aug. 20, 2014) ("There is no suggestion . . . that Jackson's conduct was the 'proximate

cause' of anything."). The fact that in 2017 the CCSO also fired Superintendent Brown, who had

testified on the CCSO's own behalf at an ILRB hearing years earlier regarding the supervisor's

unionization petition, also offers nothing beyond speculation that Superintendent Brown was laid

off due to his mere association with the ILRB hearing and that this somehow relates to Plaintiffs'

own activities and terminations. Ultimately, Plaintiffs do not offer material evidence from which

a jury could conclude that the CCSO not only opposed unionization but retaliated against

Plaintiffs for their unionization activities.

Plaintiffs' other cited factors amount to little more than arguing that Defendants should

have addressed the CCSO's budget crisis in some way other than terminating all DOC

commanders and that they were not required by Cook County to terminate employees to meet

CCSO's FY2018 budget. Mere speculation and claims that a different solution would have been

better policy and that commanders were valued within the CCSO does not present a *prima facie*

case of retaliation here. *See Nicholson v. City of Peoria, Ill.*, 860 F.3d 520, 524 (7th Cir. 2017)

("Even if we didn't think that it was particularly smart for the selection committee to pick

Skaggs based on the interview, it clearly wasn't irrational. Thus, we will not second-guess the

defendants' hiring decision in this case.").

Even when considered together, Plaintiffs' evidence does not overcome summary

judgment. Plaintiffs ultimately offer little beyond conjecture that because Plaintiffs had been

15

seeking unionization and had obtained a favorable ruling around the time that the CCSO was forced to swiftly implement significant budget cuts, Defendants presumably fired all commanders (including Plaintiffs) because of those unionization efforts. However, this speculation is not materially borne out by the record, and Plaintiffs fail to make out a *prima facie* case of retaliation at this stage. Further, and as explained below, even if the Court concluded otherwise, it nevertheless would grant summary judgment for Defendants based on a lack of evidence that Defendants' facially legitimate explanation for Plaintiffs' terminations due to the CCSO's budget crisis was pretextual.

**b. Legitimate, Nonretaliatory Reason for the Firings**

Even were Plaintiffs to have presented a *prima facie* case of retaliation at this stage, Defendants have offered a credible nonretaliatory reason for Plaintiffs' termination: the severe budget challenges presented in Fall 2017 that required the CCSO to cut $65 million from its proposed FY2018 budget. "When the plaintiff establishes a prima facie case of retaliation, an employer may produce evidence which, taken as true, would permit the conclusion that it had a legitimate non-discriminatory reason for taking the adverse employment action." *Robertson v. Dept. of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020). Here, Defendants have offered ample undisputed factual support for the CCSO's budget circumstances as the reason that all commanders, including Plaintiffs, were terminated in November 2017. Were Plaintiffs to survive summary judgment as to a *prima facie* case of retaliation, they thus would have to also survive it as to whether Defendants' nonretaliatory reason for their firings was pretextual.

**c. Pretext**

Plaintiffs do not present a material factual dispute regarding pretext, and so summary judgment in Defendants' favor is appropriate on this ground as well. Because Defendants offer a

legitimate, nonretaliatory reason for Plaintiffs' firings, the burden shifts back to Plaintiffs to "demonstrate a material issue of fact as to pretext" by showing "either (1) it is more likely that a discriminatory reason motivated the employer than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) (citation omitted). "Pretext is more than a mistake on the part of the employer; it is a phony excuse." *Id.* "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Steward v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (citations omitted).

Here, the record is clear that Defendants' purported reasons for firing Plaintiffs were real—there is no legitimate question that the CCSO was presented with a serious, immediate $65 million budget shortfall that would require substantial cuts, and that Defendants (specifically Chief Curry) ultimately settled on terminating all commanders as part of those cuts. As explained above when assessing Plaintiffs' *prima facie* case, the various circumstantial evidence Plaintiffs point to does not present a genuine issue that survives summary judgment, especially when considered alongside the undisputed budgetary context of Plaintiffs' terminations. Plaintiffs may believe that Defendants should have taken a different approach to address the budgetary challenges presented to them in 2017, but they have not presented material evidence to conclude that Defendants' offered justifications were mere pretext rather than a genuine and nonretaliatory attempt to make the necessary cutbacks. *See Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 396 (7th Cir. 1998) (explaining that a foolish, trivial, or even baseless decision, if honestly believed by the employer, is not pretextual) (citing cases). Just as Plaintiffs fail to support a *prima facie* case of retaliation, they doubly fail to produce material evidence that would permit a reasonable jury to find that Defendants' explanation for their terminations was pretextual. *See Bless*, 9 F.4th

17

at 573 ("Even if Bless could establish the *prima facie* case, his claim fails for the additional

reason that Bless failed to present evidence showing that the proffered [nondiscriminatory]

reasons for firing him were pretextual."); *Jajeh*, 678 F.3d at 572 ("Dr. Jajeh cannot demonstrate

that Cook County's articulated reason for his termination was a lie, and therefore Dr. Telfer's

promotion does not support an inference of pretext."); *Stewart*, 207 F.3d at 378 (7th Cir. 2000)

("We do not sit as a superpersonnel department that reexamines an entity's business decision and

reviews the propriety of that decision. Our only concern is whether the legitimate reason

provided by the employer is in fact the true one." (citation omitted)). Accordingly, summary

judgment in Defendants' favor as to Counts I and II is appropriate, and those claims are

dismissed.

### d. Plaintiffs' *Monell* and Indemnification Claims

Because the Court grants summary judgment as to Plaintiffs' retaliation claims (Counts I

and II), it likewise must grant summary judgment as to Plaintiffs' remaining *Monell* and

indemnifications claims (Counts V and VIII), which relied on the same purported constitutional

violations as the retaliation claims. The Court therefore grants summary judgment in Defendants'

favor as to all claims.

### III.   Plaintiffs' Motion for Reconsideration (ECF. No. 170)

Plaintiffs move for reconsideration of the Court's September 17, 2019, ruling granting

Defendants' motion to dismiss as to Count III—which alleged a violation of procedural due

process—under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court

specifically concluded that Plaintiffs' Third Amended Complaint did not adequately plead

Plaintiffs were entitled to Merit Board protection either (1) because Commander was a Merit

Board protected rank or (2) because Plaintiffs maintained their Merit Board protections as

Lieutenants even after becoming Commanders. Plaintiffs now argue that the Court should reconsider that ruling given evidence elicited during discovery in this case—specifically, deposition testimony from Robert Egan and provisions in SEAM Articles A and Q—that they believe further supports their earlier arguments.

A motion to reconsider an interlocutory order, like the Court's dismissal of Count III, is governed by Federal Rule of Civil Procedure 54(b), which provides that such orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The court thus may reconsider its prior rulings in its discretion, though motions to reconsider are disfavored. *See Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911 (N.D. Ill. 2015). "Such motions 'serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (citations omitted). "A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Here, Plaintiffs claim newly discovered evidence, which requires a showing "that the evidence was unknown until after the hearing and the moving party could not have discovered and produced such evidence with reasonable diligence before the court's earlier decision." *Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16 C 2522, 2018 WL 704693, at *2 (N.D. Ill. Feb. 5, 2018) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). The party seeking reconsideration "bears a heavy burden, and motions for reconsideration 'are not at the disposal of parties who want to "rehash" old arguments.'" *Patrick*, 103 F. Supp. 3d at 912 (citation omitted).

Plaintiffs' motion fails. At the outset, the portions of SEAM Plaintiffs point to were available by January 2017, before Plaintiffs filed this case and long before the Court considered

Defendants' motion to dismiss Count III. The only "new" facts Plaintiffs thus can attempt to point to are those they cite in Egan's deposition testimony.

Plaintiffs do not explain how they could not have discovered the facts purportedly revealed during Egan's deposition earlier despite diligent efforts—especially since those facts (*i.e.*, whether Plaintiffs held a merit rank in 2017) existed well before this case began. *See Johnke v. Espinal-Quiroz*, No. 14-cv-6992, 2018 WL 3381888, at *6 (N.D. Ill. July 9, 2018) ("All of these documents *reference facts that existed well before the summary judgment briefing began* and thus could have been obtained earlier." (emphasis in original)). Plaintiffs seem to assume that they are off the hook simply because the evidence they point to, which addresses facts that existed years earlier, shows up in a deposition taken after the Court's September 2019 ruling. But "[f]acts that were available to Plaintiffs before the Court's dismissal order are not newly discovered merely because they are later presented again in the form of deposition testimony." *Walls v. Vre Chicago Eleven, LLC*, No. 16-cv-4048, 2020 WL 887488, at *4 (N.D. Ill. Feb. 24, 2020) (citing cases). Plaintiffs must show that they could not have discovered the relevant facts regarding their own merit rank status before the Court dismissed Count III, and have made no attempt to do so.

Plaintiffs' motion for reconsideration also fails because it asks the Court to reevaluate dismissal based on newly introduced evidence outside of Plaintiffs' own complaint—which the Court does not consider when evaluating whether Plaintiffs have pled a claim under Rule 12(b)(6). *See United States ex rel. Sibley v. Univ. of Chi. Med. Ctr.*, 44 F.4th 646, 662 (7th Cir. 2022) ("[A] ruling on a motion to dismiss considers only the pleadings[.]"). The Court previously evaluated the allegations in Plaintiffs' Third Amended Complaint, found them lacking as to Count III, and dismissed that count. That dismissal inquiry remains unchanged—Plaintiffs'

allegations in their operative complaint are the same now as there were in September 2019, and Plaintiffs have not argued why the facts they claim are newly discovered, though outside of their complaint, may nonetheless be considered to reassess Defendants' prior Rule 12(b)(6) motion. Plaintiffs have not sought to amend their complaint to add new allegations related to their merit ranks, and the Court thus is left with the same allegations it already found lacking when it previously considered Plaintiffs' arguments and dismissed Count III. (*See* ECF No. 77 at 7–9.) Because Plaintiffs offer nothing new for purposes of the Court's prior dismissal, reconsideration is unwarranted.

## Conclusion

For the above reasons, the Court grants Plaintiffs' motion for leave to file a sur-reply (ECF No. 168), grants Defendants' motion for summary judgment (ECF No. 144), and denies Plaintiffs' motion for reconsideration (ECF No. 170). Civil case terminated.

**SO ORDERED.**                                        **ENTERED: September 20, 2023**

**HON. JORGE ALONSO**

**United States District Judge**